IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
-Alexandria Division-

| | | |
|---|---|---|
| AWP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-332 (TSE/MSN) |
| | ) | |
| SJK SERVICES, LLC | ) | |
| DAVID SAMUEL RICE | ) | |
| KEITH FRANCIS DOWLING | ) | |
| SHAWN WATKINS | ) | |
| | ) | |
| Defendants, | ) | |

BRIEF IN SUPPORT OF MOTION TO DISMISS
FILED BY SJK SERVICES, LLC AND KEITH FRANCIS DOWLING

COME NOW Defendants SJK Services, LLC (“SJK”) and Keith Francis Dowling (“Dowling”), by counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully submit this Brief in Support of their Motion to Dismiss filed herewith.

SUMMARY OF PLAINTIFF’S ALLEGATIONS

AWP, Inc. alleges it is the largest comprehensive traffic control company in the United States, (Complaint, ¶ 10), and that it offers traffic control services to nearly every major public utility from Michigan to New York and south to Florida with services including traffic control, special events, engineering and design, consulting, and safety and training together with equipment rental and sales. (Complaint, ¶ 11). Certain employees of AWP execute employment agreements whereby they covenant not to participate in any business that competes with AWP and not to solicit or hire away AWP employees under specific conditions. (Complaint, ¶ 16). Rice executed a Confidentiality, Non-Competition & Non-Solicitation Agreement with AWP on

April 15, 2013 (the “Rice Agreement” attached as Exhibit A). (Complaint, ¶ 20). Watkins executed an agreement with AWP on December 27, 2012 (the ”Watkins” Agreement” attached as Exhibit B). (Complaint, ¶ 28). AWP alleges Dowling hired Rice and Watkins with the goal of misappropriating AWP’s confidential and proprietary trade secret information in direct violation of Rice’s and Watkin’s agreements with AWP and applicable state law. (Complaint, ¶ 39). The office of SJK is said to be located approximately 37 miles from AWP’s Manassas, Virginia office, 68 miles from AWP’s Waldorf, Maryland office and 82 miles from AWP’s Baltimore, Maryland office. ((Complaint, ¶ 42).

In its claim for breach of contract against Rice, AWP alleges the Rice Agreement is a valid and enforceable contract. (Complaint, ¶ 55). AWP also alleges the Watkins Agreement is a valid and enforceable contract. (Complaint, ¶ 62). AWP alleges SJK and Dowling knew of the existence of covenants in the Rice and Watkins Agreements, (Complaint, ¶ 71), and that despite such knowledge, SJK and Dowling permitted, caused, encouraged, and/or induced Rice and Watkins to breach those covenants in the Rice and Watkins Agreements. (Complaint, ¶ 72). With the filing of its Complaint, AWP alleged claims against Dowling and SJK of tortious Interference with contract, (Complaint, ¶ 75), misappropriation of trade secrets, (Complaint, ¶ 83), conspiracy to injure in trade, business or profession, (Complaint, ¶ 88), and unfair competition. (Complaint, ¶ 95).

LEGAL STANDARD

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.

Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*)*. This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*. 120 F.3d 472, 474 (4th Cir. 1997). While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Similarly, the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

ARGUMENT

Plaintiff, AWP, Inc., filed its six-count Complaint against two of its former employees, David Samuel Rice and Shawn Watkins, and against SJK Services, LLC., (“SJK”), and Keith Francis Dowling, (“Dowling”). The Complaint puts forth claims against SJK and Dowling for Tortious Interference with Contract, **(Count III)**, Misappropriation of Trade Secrets, Va. Code §§59.1-336 to -343, **(Count IV)**, Conspiracy to Injure in Trade, Business or Profession, Va. Code §§18.2-499 and -500, **(Count V)**, and Unfair Competition, **(Count VI**). SJK and Dowling were not parties to

the Rice and Watkins contracts and, accordingly, have not been alleged to have themselves otherwise breached the terms of the contracts.

**1. Virginia law governs the validity of the Rice Agreement and the Watkins Agreement.[1]**

A court sitting in diversity applies the substantive law of the forum state. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78-79, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). As a rule, courts in Virginia apply the law of the state in which the contract was executed. *Black v. Powers,* 48 Va. App. 113, 628 S. E. 2d 546 (2006). However, Virginia is said to look favorably upon choice of law clauses in a contract, giving such clauses full effect except in unusual circumstances. *Colgan Air, Inc. v. Raytheon Aircraft Co.,* 507 F. 3d 270, 275 (4th Cir. 2007). In its Complaint, the Plaintiff attached the Rice Agreement to its Complaint as "Exhibit A" and the Watkins Agreement as "Exhibit B," thus incorporating those documents into its Complaint. Throughout the Complaint, AWP make naked allegations of improper conduct on the part of Dowling and SJK. See Complaint, ¶ 39, where AWP alleges ". . . Dowling hired Rice and Watkins with the goal of misappropriating AWP's confidential and proprietary trade secret information, in direct violation of their agreements with AWP and applicable state law." See Complaint, ¶ 48, where AWP alleges "[j]ust as SJK took AWP's employees, it also induced some of AWP's customers to leave, causing AWP to lose business." See Complaint, ¶¶ 71 – 72, where AWP alleges "SJK and Dowling knew of the existence of the covenants in the Rice Agreement and the Watkins Agreement [and] [d]espite such knowledge, SJK and Dowling permitted, caused, encouraged, and/or induced Rice and Watkins to breach the covenants contained in the Rice Agreement and the Watkins

---

[1] Should this Court, however, determine that Ohio law does govern, notwithstanding arguments otherwise, Dowling and SJK take the position that the substantive law of Ohio is not so materially different from Virginia law in terms of enforcement of non-competition agreements that the substantive laws of Ohio would also render the agreements unenforceable.

Agreement, respectively." See also Complaint, ¶ 88, where AWP alleges "Rice, Watkins, Dowling, and SJK combined, conspired, confederated, and agreed to create a business to compete with AWP, wrongly solicit or hire as many of AWP's employees as possible, steal AWP's existing and future business opportunities, and otherwise willfully and maliciously injure AWP in its Reputation, trade, or business." By electing to join SJK and Dowling into this civil action, which seeks enforcement for violations of both the Watkins and Rice Agreements, AWP has agreed to the substantive laws and public policies of the Commonwealth of Virginia.

AWP's agreement to have its claims governed by the substantive laws and public policies of the Commonwealth of Virginia is reinforced or proved by provisions in the Watkins Agreement. In pertinent part, the Watkins Agreement provides ". . . that the covenants contained in paragraphs 2 through 5 above [pertaining to non-competition and non-solicitation] shall be enforced to the fullest extent possible under the laws and public policies that apply in each jurisdiction in which enforcement may be sought . . . . " (Watkins Agreement, p. 2, ¶6c); and the provision "AWP will be entitled to enforce such provision(s) to the extent permissible under the laws and public policies apply in the jurisdiction in which enforcement is sought." (Watkins Agreement, p. 2, ¶6d). As this diversity action was brought by AWP in the Commonwealth of Virginia, it chose for enforcement of its claims the substantive laws and public policies of the Commonwealth of Virginia.

Unlike the Watkins Agreement, the Rice Agreement[2] contained a choice-of-laws provision labelled "Governing Law" that provided that "th[e] Agreement shall be governed,

[2] Although executed by Rice on 4/15/13, the Rice Agreement as shown in Exhibit A of the Complaint does not evidence this agreement was ever executed by AWP.

construed, performed and enforced in accordance with its express terms and otherwise in accordance with the laws of the State of Ohio, without reference to principles of conflict of laws.” See Rice Agreement, p. 5, ¶ 3 (c). Without more, it would appear that if the allegations made against Dowling and SJK were limited solely to the Rice Agreement, the laws of the State of Ohio might govern the substantive laws and public policies under which this diversity action were to be decided. However, as AWP claimed specific violations of the laws of the Commonwealth of Virginia in its claims of Misappropriation of Trade Secrets in violation of Va. Code §§59.1-336 to -343, (Count IV), and Conspiracy to Injure in Trade, Business or Profession in violation of Va. Code §§18.2-499 and -500, (Count V), claims that cannot be enforced or decided under the laws of Ohio, AWP has elected to pursue its claims under the substantive laws and public policies of the Commonwealth of Virginia. While this Court may generally be expected to honor the choice-of-laws provision contained in the two agreements that form the basis of AWP’s claims against Dowling and SJK, it must be said that where these agreements contain differing choice-of-law provisions and where enforcement was sought in the one civil action filed in the Commonwealth of Virginia and where violations of specific laws of the Commonwealth of Virginia were claimed, any claim that the substantive laws and public policies of the state of Ohio govern this action must be rejected as unfair or unreasonable or as there is some indication that the parties did not clearly intend for the designated law of Ohio to govern the terms of the Rice Agreement. See *Paul Bus. Sys. Inc. v. Cannon U.S. A., Inc*., 240 Va. 337, 342, 397 S. E. 2d 804 (1990).

2. **Non-Compete Provisions in the Rice Agreement is overly broad as to function, and is thus unenforceable.**

Section 2(c) of the Rice Agreement provides, in pertinent part, as follows:

> "[Rice] as principal, or in conjunction with any other person, firm, partnership, corporation or other form of business organization or arrangement (whether as a shareholder, partner, member, principal, agent, lender, director, officer, manager, trustee, representative, employee or consultant), directly or indirectly, be employed by, provide services to, in any way connected, associated or have any interest of any kind in, or give advice or consultation to any Competitive Business within a 120-mile driving distance from Employee's regularly assigned place of duty or office." Complaint, ¶ 22, Exh. A, ¶ 2(c).

In Virginia it is well-settled that a non-compete agreement is enforceable only if it "is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy." *Home Paramount Pest Control Co. v. Shaffer,* 282 Va. 412, 415, 718 S.E.2d 762, 763-64 (2011) (citing *Omniplex World Servs. Corp. v. US Investigations Servs., Inc.,* 270 Va. 246, 249, 618 S.E.2d 340, 342 (2005)). The employer carries the burden of proof on each of these factors. *Modern Env'ts, Inc. v. Stinnett,* 263 Va. 491, 493, 561 S.E.2d 694, 695 (2002). In determining whether an employer meets their burden, the "function, geographic scope, and duration" restrictions in the non-compete agreement are "considered together" instead of "as three separate and distinct issues." *Simmons v. Miller,* 261 Va. 561, 581, 544 S.E.2d 666, 678 (2001). When assessing the function element of non-compete clauses, the court determines "whether the prohibited activity is of the same type as that actually engaged in by the former employer." *Home Paramount, 282 Va. at 416, 718 S.E.2d at 764*.

As shown above, the non-compete clause states that Rice is prohibited from "be[ing] employed by, provid[ing] services to, in any way connected, associated or have any interest of any kind in, or give advice or consultation to any Competitive Business. . . ." This provision prohibits Rice from working in any capacity with any person, entity or business that is in

competition with AWP. In order to be valid, this non-compete provision would necessarily only prohibit "an employee from engaging in activities that actually or potentially compete with the employee's former employer." *Id.* (citing *Omniplex World Servs. Corp. v. US Investigations Servs., Inc.,* 270 Va. 246, 249, 618 S.E.2d 340, 342 (2005)). "When a former employer seeks to prohibit its former employees from working for its competitors in any capacity, it must prove a legitimate business interest for doing so." *Home Paramount,* 282 Va. at 417-18, 718 S.E.2d at 765. In this case AWP fails to produce any legitimate business interest for prohibiting Rice from working in any capacity with any person, entity or business that is in competition with AWP.

Citing both *Omniplex*, *id*, and *Home Paramount, id.,* the Circuit Court for the City of Norfolk wrote in *K & K of Va., L.L.C. v. James Brinkley and Tanita Brinkley, 87 Va. Cir. 4, 2013 LEXIS* 154, that where the non-compete prohibited the Brinkleys from working in any capacity with any business competitive with the employer, the provision was overly broad. There, the specific language provided, in pertinent part, that the employee "will not directly or indirectly engage in any business competitive with Head Start."

Here, the specific language provides, in pertinent part, that Rice will not "be employed by, provide services to, in any way connected, associated or have any interest of any kind in, or give advice or consultation to any Competitive Business. . . ."." As the non-compete provision in *K & K of Va., L.L.C. v. Brinkley, id.,* prohibited the Brinkleys from working in any capacity with any business competitive with the employer, this particular provision in the Rice Agreement prohibits even the accepting of employment from any person, entity or business in competition with AWP. Such a prohibition as "be[ing] employed by, provid[ing] services to, in any way connected, associated or have any interest of any kind in, or give advice or consultation to any

Competitive Business. . . .” is clearly over reaching and overly broad, and is thus invalid and unenforceable. Restrictive covenants that prohibit employees from working in any capacity for a competitor are overbroad, and therefore are unenforceable. *Modern Env'ts, Inc. v. Stinnett,* 263 Va. at 495-6, 561 S.E.2d at 696.

3. **The provision contained in the Rice Agreement that reads “. . . request, suggest or deliberately cause any employee of AWP to breach or threaten to breach terms of said employee’s agreement with AWP or to terminate his or her employment with AWP” fails for overbreadth and ambiguity.**

Paragraph 2(d) entitled “Non-Solicitation of Employees” contained in the Rice Agreement places on Rice the restriction that he must not “. . . request, suggest or deliberately cause any employee of AWP to breach or threaten to breach terms of said employee’s agreement with AWP or to terminate his or her employment with AWP.” The activities prohibited by this provision of the Rice Agreement are clearly not drafted to protect a legitimate business interest of an employer. As the Circuit Court for Fairfax County pointed out in the case of *ManTech International Corp. v. Analex Corp., et al,* 75 Va. Cir. 354, 2008 Va. Cir LEXIS 70, such a restriction is not limited to preventing a former employee from persuading an employee from taking a job with a competitor, but it has “other imaginable scenarios includ[ing], but not limited to, those circumstances in which one employee convinces another to retire early, join the military, or move to another state. A clause of this nature is not narrowly tailored to protect a legitimate business interest and is unenforceable per se.” *ManTech International Corp.,* 75 Va. Cir. at 357.

4. **The provision contained in the Rice Agreement that restricts the Non-Solicitation of Clients and Customers fails for overbreadth and ambiguity.**

Paragraph 2(e) entitled "Non-Solicitation of Clients and Customers" contained in the Rice Agreement prohibits Rice from ". . . solicit[ing] or accept[ing] any business, in competition with AWP, from any person or entity who was an existing or prospective customer or client of AWP at the time of, or at the time during the twelve (12) months preceding, Employee's termination of employment. . . . " By prohibiting the solicitation and acceptance of business from "prospective customer[s]" in the Rice Agreement, the agreement thereby imposes an unreasonable burden on the employee to know all the customers and prospective customers of AWP which renders the Rice Agreement overbroad and unenforceable as a matter of law. See *Lasership, Inc. v. Belinda Watson and MidNite Air Corp., d/b/a Midnite Express,*79 Va. Cir. 205, 215, 2009 Va. Cir. LEXIS 64.

5. **Plaintiff's Claim for Conspiracy to Injure Business Pursuant to Va. Code §§18-499 and -500 must fail as it is not alleged that Defendants SJK and Dowling acted unlawfully.**

In addressing the issue of a claim under Va. Code §§18.2-499 and 18.2-500 where the violation involved the breach of a contract provision, the Supreme Court of Virginia wrote the following in *Station #2, LLC v. Michael Lynch, et al.,* 280 Va. 166, 174, S.E.2d 537, 541 (2010):

> "To permit a mere breach of contract to constitute an "unlawful act" for the purposes of the conspiracy statute would be inconsistent with the diligence we have exercised to prevent "turning every breach of contract into an actionable claim for fraud." *Dunn Constr. Co., 278 Va. at 268, 682 S.E.2d at 946*; *Augusta Mutual, 274 Va. at 208, 645 S.E.2d at 295*; *Richmond Metro. Auth., 256 Va. at 560, 507 S.E.2d at 348*. Non-performance of a contractual promise does not, without more, create a basis for recovery in tort. Likewise, we do not believe it can rise to the level of an "unlawful act" under *Code § 18.2-500* for a similar reason: the duty of performance under the contract springs solely from the agreement; the duty is not imposed extrinsically by statute, whether criminal or civil, or independently by common law. Thus, non-performance, without more, is not an "unlawful act."

In order "to survive demurrer, an allegation of conspiracy, whether criminal or civil, must at least allege an unlawful act or an unlawful purpose." *Hechler Chevrolet, Inc. v. General*

*Motors Corp., 230 Va. 396, 402, 337 S.E.2d 744 (1985)*. "To prove a violation of this statute, a Plaintiff must show that the conspirators acted with malice, meaning that 'the Defendant acted intentionally, purposefully, and without justification'." *BB&T Ins. Servs. v. Thomas Rutherfoord, Inc., 80 Va. Cir. 174, 184 (2010)*.

These allegations do not present any unlawful act or unlawful purpose. These allegations, if proven, would only amount to a breach of contract under the otherwise unenforceable Rice Agreement.

Furthermore, a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil claim under *Va. Code § 18.2-500*. *Station # 2, L.L.C. v. Lynch, 280 Va. 166, 174, 695 S.E.2d 537, 541 (2010)*. Plaintiff has not claimed that Rice, Watkins, Dowling and SJK had an independent duty arising outside the contract.

As for common law conspiracy, there are four elements to state a prima facie cause of action: (1) a combination of two or more persons; (2) to accomplish, by some concerted action; (3) some criminal or unlawful purpose or some unlawful purpose by a criminal or unlawful means; and (4) resultant damage caused by the Defendant's acts committed in furtherance of the conspiracy. *Werth v. Fire Cos. Adjustment Bureau Inc., 160 Va. 845, 854, 171 S.E. 255, 258 (1933)*.

As stated in *Hechler Chevrolet,* "[t]here can be no conspiracy to do an act which the law allows." *230 Va. at 402, 337 S.E.2d at 748*. As discussed earlier, Plaintiff fails to allege any unlawful act or unlawful purpose.

Instructive also is that portion of the *Station #2* decision by the Supreme Court of Virginia that reads:

> In *Worrie v. Boze, 198 Va. 533, 536, 95 S.E.2d 192, 196 (1956)*, we recognized a common law claim of conspiracy by a plaintiff who alleged the defendants had conspired to procure the breach of a contract. We commented in *Chaves v. Johnson, 230 Va. 112, 119-20, 335 S.E.2d 97, 102 (1985)*, that such claims were embraced by *Code §§ 18.2-499* and *18.2-500*. However, we presently are of opinion that a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil claim under *Code § 18.2-500*.

For these reasons that the claims under Va. Code §§18.2-499 and 18.2-500 failed in *Station # 2, L.L.C. v. Lynch,* so too must those claims fail in this case.

6. **The Common Law Claim of Unfair Competition Fails as the allegations of AWP do not fall within Virginia's narrow definition of unfair competition as to Dowling and SJK**.

This Court in *Coninthian Mortgage Corp. d/b/a Southbanc Mortgage v. ChoicePoint Precision Marketing, LLC,* 2008 U. S. Dist. LEXIS 28129, wrote: "Virginia continues to adhere to a narrow, sharply defined common law definition of unfair competition, i.e. 'deception, by means of which goods of one dealer are palmed off as those of another.'" See also *Monoflo International, Inc. v. Sahm,* 726 F. Supp.121, 127-128 (E.D. Va. 1989) and *Benjamin T. Crump Co. v. J. L. Lindsay, Inc.*, 130 Va. 144, 107 S.E. 679, 684 (1921). As claims of alleged misrepresentations *Crump, id.,* cannot serve as a basis for recovery on claims of unfair competition, the allegations of AWP as to the allegations of tortious activity and misconduct of the Defendants unrelated to "goods of one dealer palmed off as those of another" cannot serve as the basis for AWP's common law claim of unfair competition within Virginia's narrow definition of unfair competition.

7. **The "Blue Penciling" Provision Contained in the Agreement Renders the Agreement Invalid and Unenforceable in its Entirety.**

The Rice Agreement contained a "Blue Pencil" provision that reads as follows:

> "Blue Pencil. If, at any time, the provisions of this Agreement shall be determined to be invalid or unenforceable under any applicable law, by reason of being vague or unreasonable at to area, duration or scope of activity, this Agreement shall be considered divisible and shall become and be immediately amended to only such area, duration and scope of activity as shall be determined to be reasonable and enforceable by the court or other body having jurisdiction over the matter and Employee and AWP agree that this Agreement as so amended shall be valid and binding as though any invalid or unenforceable provision had not been included [t]herein. See Rice Agreement, p. 4, ¶ 2(h).

While the term "blue pencil" or "blue penciling" is not contained in the Watkins Agreement, that agreement provides:

> "c. That it is the understanding and desire of the parties hereto that the covenants contained in paragraphs 2 through 5 above shall be enforced to the fullest extent possible under the laws and public policies that apply in each jurisdiction in which enforcement may be sought and that should any particular provision of such covenant be deemed invalid or unenforceable, such provision(s) shall be deemed amended or deleted therefrom the invalid portions(s) and the deletions(s) shall apply only with respect to the operation of such provisions(s);
>
> d. To the extent that any provision(s) in paragraph 2 through 5 is (are) deemed unenforceable by virtue of its (their) scope, but shall be enforceable by limitation thereof, AWP will be entitled to enforce such provision(s) to the extent permissible under the laws and public policies apply in the jurisdiction in which enforcement is sought and such provisions (s) may be modified and enforced by a court of competent jurisdiction." See Watkins Agreement, p. 2, ¶¶6c and 6d.

Before the case of *BB&T Insurance Services, Inc. v. Thomas Rutherfoord, Inc., et al.*, Record No. 101843, was settled and the appeal withdrawn on December 1, 2011, the Supreme Court of Virginia granted a certificate of appeal for the assignment of error that read as follows:

> "5. The Circuit Court erred in holding that the inclusion of a so-called "blue pencil" provision in section 16 of the Agreement invalidated the contract in its entirety and thereby sustaining Defendants' demurrer to Count II and III of the Complaint."

The trial court in that case was called upon to determine the validity of an agreement that contained a "blue pencil" provision like that found in the Rice and Watkins Agreements. *BB&T Insurance Services, Inc. v. Thomas Rutherfoord, Inc., et al.,*80 Va. Cir. 174, 181, 2010 Va. Cir. LEXIS 25.

> "If any provision of this Agreement shall be deemed invalid as to its scope, then notwithstanding such invalidity, such provision shall be deemed valid to the fullest extent permitted by law, and the parties agree that, if any court makes such a determination, such court shall have the power to reduce the duration, scope and/or area of such provision and/or to delete specific words and phrases by "blue penciling" and, in its reduced or blue penciled form, to enforce such provision to the fullest extent permitted by law."

While state and federal courts have consistently disaffirmed such blue pencil provisions, as pointed out in *BB&T Insurance Services, Inc. v. Rutherfoord, Inc.,* 80 Va. Cir. 174, 181, Va. Cir. LEXIS 25 (2010), the Supreme Court of Virginia has not directly ruled on "blue penciling" restrictive covenants.

Citing *Pace v. Ret. Pan Admin. Serv. Ltd*. 74 Va. Cir. 201 (Richmond, 2007), and *Lasership, Inc. v. Belinda Watson and Midnite Air corp., d/b/a Midnite* Express, 79 Va. Cir. 205, 2009 Va. Cir. LEXIS 64, the trial court in *BB&T Insurance Services, Inc.* held such provisions have been deemed invalid and render the agreement unenforceable. In dismissing the Plaintiff's complaint on demurrer, the trial court in *BB&T Insurance Services, Inc.* was called upon to decide issues in an agreement regarding non-competition, confidentiality and a blue-penciling provision. Having found that the BB&T Insurance Services Agreement contained non-competition restrictions that were overbroad and unenforceable, that it contained particular language that rendered the confidentiality clause unenforceable, and that it found the unequivocal presence of the blue-pencil provision in the agreement, the trial court found the agreement to be invalid

in its entirety. Without a legally enforceable contract between the parties, the demurrer was granted and the case was dismissed.

## CONCLUSION

For all of the above reasons, Defendants SJK Services, LLC and Keith Francis Dowling respectfully request that this Court grant its Motion to Dismiss.

Dated: May 25, 2016

Respectfully submitted,

/s/_James M. Stewart, Jr.

James M. Stewart, Jr., Esquire
Virginia State Bar No. 14444
*Counsel for SJK Services LLC and*
*Keith Frances Dowling*
4041 University Drive, Suite 301
Fairfax, Virginia 22030
Telephone: (540) 539-4993
Fascimile: (540) 678-5595
jmstewart2@comcast.net

CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of May, 2016, I filed the foregoing BRIEF IN SUPPORT OF MOTION TO DISMISS FILED BY DEFENDANTS SJK SERVICES, LLC AND KEITH FRANCIS DOWLING with the Court's electronic filing system, which will effect notice on counsel of record:

Bernard Joseph DiMuro, Esquire
DiMuroGinsberg P.C.
1101 King Street, Suite 610
Alexandria, Virginia 22314-2956
Telephone: (703) 684-4333
Facsimile: (703) 548-3181

Robert P. Ducatman, Esquire
Jeffrey Saks, Esquire
Candice Reder, Esquire
Jones Day
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

I further certify that on the 25th day of May, 2016, I mailed, with postage prepaid, the foregoing BRIEF IN SUPPORT OF MOTION TO DISMISS FILED BY DEFENDANTS SJK SERVICES, LLC AND KEITH FRANCIS DOWLING to the person(s) listed below:

Shawn Watkins
65 Donaldsburg Lane
Fairfield, Virginia 24435
Telephone: (540) 810-2670
swatkins@agstacker.com

/s/_James M. Stewart, Jr.
James M. Stewart, Jr.