**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

AWP, Inc.,

       Plaintiff,

    v.

SJK SERVICES LLC, DAVID SAMUEL
RICE, KEITH FRANCIS DOWLING and
SHAWN WATKINS,

      Defendants.

CASE NO.  1:16-cv-332-TSE-MSN

**PLAINTIFF AWP, INC.'S MEMORANDUM IN OPPOSITION
TO DEFENDANT DAVID S. RICE'S MOTION TO DISMISS**

Defendant David S. Rice's Motion to Dismiss must be denied.  AWP, Inc. has alleged

valid claims against Rice, who breached his employment agreement with AWP and helped start a

competing business using AWP's confidential and proprietary trade secret information.  Rice's

motion to dismiss misapplies the law and mischaracterizes the factual allegations in AWP's

complaint, which are presumed true.  Rice principally argues that the restrictive covenants in his

employment agreement are unenforceable.  Putting aside that this determination should be made

only after considering evidence and not on a motion to dismiss, settled law demonstrates that

each covenant is reasonable on its face and under the facts alleged in the Complaint.  Likewise,

Rice mischaracterizes the allegations for misappropriation of trade secrets, which also states a

valid claim for relief.

## I.   AWP's COMPLAINT[1]

AWP has spent 25 years growing its business from a small, local security company to the largest comprehensive traffic control company in the United States, with operations in Virginia and 17 other states.  (Compl. ¶ 10.)  AWP expended substantial time and resources developing confidential and proprietary trade secret information related to its strategic plans to develop and market its services, lists of its customers and prospective customers, customer information and preferences, pricing, and employee compensation and benefits.  (*Id.* ¶¶ 12-13.)  AWP safeguards this information by limiting its access only to employees with a legitimate business reason to use it and requires them to sign agreements not to disclose or use the information for another purpose.  (*Id.* ¶ 14.)

Rice was a manager at AWP's Manassas, Virginia office for more than five years.  (*Id.* ¶¶ 17, 26.)  His responsibilities included managing all of the office staff, soliciting business, working closely with customers and identifying opportunities to expand AWP's business.  (*Id.* ¶ 17.)

In performing his job, Rice accessed AWP's confidential and proprietary trade secret information.  (*Id.* ¶ 19.)  He acknowledged this in his Confidentiality, Non-Competition & Non-Solicitation Agreement with AWP ("Rice Agreement," Compl. Ex. A), which he signed on April 15, 2013.  (*Id.* ¶¶ 20-21.)  Rice agreed that he would not "at any time" "divulge, use, publish, or in any other manner reveal" confidential and proprietary trade secret information belonging to AWP.  (*Id.* ¶ 21.)

---

[1] With consent of the defendants, AWP has filed a motion for leave to amend its complaint to delete its cause of action for unfair competition.  The other five causes of action will remain and the allegations are unchanged.  Citations to allegations in the Complaint and proposed Amended Complaint are identical.

Nevertheless, Rice did divulge, use and reveal AWP's confidential and proprietary trade secret information.  Keith Dowling was a customer of AWP.  (*Id.* ¶¶ 36-37.)  In September 2015, Dowling incorporated a traffic services business, SJK Services LLC ("SJK"), to compete against AWP.  (*Id.* ¶¶ 38, 41.)  Rice assisted in the creation of SJK even though he was still employed at AWP.  (*Id.* ¶ 43.)  Less than three months after SJK was incorporated, on December 4 2015, Rice voluntarily terminated his employment with AWP.  (*Id.* ¶ 26.)  He represented that he was going into business for himself and that he would honor his obligations under the Rice Agreement. (*Id.*)  Both of these statements were false.  Instead, Rice went to work for SJK and used AWP's confidential and proprietary information in order to solicit customers, business, and employees from AWP.  (*Id.* ¶¶ 45-49, 52.)  Moreover, because SJK is a direct competitor, the continued use and disclosure of AWP's confidential and proprietary trade secret information by Rice is inevitable.  (*Id.* ¶ 52.)

AWP brought this action against Rice, SJK, Dowling and another former employee, Shawn Watkins.  It alleged four causes of action against Rice, for breach of contract, misappropriation of trade secrets, conspiracy to injure in business, trade or professions and unfair competition.[2]  Rice moved to dismiss all four claims against him.[3]

AWP's claim for breach of contract (Count I) is based upon the Rice Agreement.  (*Id.* ¶¶ 20, 54 & Ex. A.)  AWP alleged that "[t]he Rice Agreement is a valid and enforceable contract,"

---

[2] AWP also alleged causes of action for breach of contract against Watkins, tortious interference with contract against SJK and Dowling, and misappropriation of trade secrets, conspiracy to injure in trade or business and unfair competition against the other three defendants.  These are not the subject of Rice's Motion to Dismiss.  The tortious interference, conspiracy, and unfair competition claims against SJK and Dowling are the subject of a separate motion to dismiss pending before this Court.  (ECF Nos. 18-19.)  Watkins has not moved to dismiss any of the claims against him.

[3] In light of AWP's proposed Amended Complaint, the motion is moot as to Count VI regarding unfair competition and remains as to Counts I, IV and V.

(*Id.* ¶ 55) and that "AWP has fully performed its obligations under the Rice Agreement" (*Id.* ¶ 56).  AWP alleged further that it "never relieved Rice of his obligations set forth in the Rice Agreement" (*Id.* ¶ 25) and that "Rice breached his contractual obligations to AWP" (*Id.* ¶ 57). AWP alleged conduct that breached the Rice Agreement and the specific provisions that were breached, including the covenants not to compete, not to solicit customers and not to solicit employees.  (*Id.* ¶¶ 21-24 & Ex. A.)  AWP also alleged that these breaches were material and damaged it.  (*Id.* ¶¶ 58-59.)

In Count IV of the Complaint, AWP alleged that Rice misappropriated its confidential and proprietary trade secret information.  AWP alleged that this information "includes but is not limited to, its strategic plans for marketing and developing its products and services, lists of customers or prospective customers, customer information and preferences, pricing arrangements, and employee compensation" and was "developed only after AWP expended substantial cost and effort over a period of many years."  (*Id.* ¶¶ 13, 81.)  AWP also alleged that it took reasonable steps to protect this information, which is "accessible only within the company by those having a legitimate business reason to use it."  (*Id.* ¶¶ 14, 16, 82.)  AWP alleged that Rice "used improper means to misappropriate and exploit AWP's confidential and proprietary trade secret information to benefit" himself and the other defendants, damaging AWP as a result. (*Id.* ¶¶ 19, 21, 83, 84.)

In Count V, AWP alleged its cause of action against Rice for conspiracy.  Referencing its claims for breach of contract and misappropriation of trade secrets, AWP alleged that Rice and the other Defendants conspired to wrongfully start a competing business, solicit AWP's employees and customers "and otherwise willfully and maliciously injure AWP in its reputation, trade, or business."  (*Id.* ¶ 88.)

## II.    STANDARD OF REVIEW

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "should assume the[] veracity" of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Alleging plausible grounds for a claim "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to prove the alleged claim." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d 443, 449 (E.D. Va. 2009).  The issue is not whether the non-moving party ultimately will prevail but whether it is entitled to offer evidence to support its claims. *Manchanda v. Hays Worldwide, LLC*, No. 1:14CV1339 JCC/TCB, 2014 WL 7239095, at *1 (E.D. Va. Dec. 17, 2014).

On a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer Fire Dept., Inc. v. Montgomery County, Md.*, 684 F.3d 462, 467 (4th Cir. 2012).  To state a valid claim, a party is required to plead more than "labels and conclusions," but "need not provide detailed factual allegations." *The Collection, LLC v. Valley Bank,* No. 4:09CV00007, 2009 WL 2357145, at *2 (W.D. Va. July 31, 2009).  "[E]ven if doubtful in fact," the factual allegations, taken as true, need merely to "raise the right to relief above the speculative level." *Colon Health Centers of Am., LLC v. Hazel,* 733 F.3d 535, 545 (4th Cir. 2013) (citing *Twombly*, 550 U.S. at 555).

### III.   RICE'S MOTION TO DISMISS SHOULD BE DENIED.

**A.   The Breach of Contract Claim Against Rice Should Not Be Dismissed.**

Rice makes two arguments that the contract claim should be dismissed, both of which are unavailing.  First, he argues that AWP has not alleged that Rice breached his contract.  (Mot. 13.)  Rice is wrong.  AWP alleged all of the elements of a claim for breach of contract, including a material breach by Rice.  Next, Rice argues that the covenants against competition and solicitation are not enforceable.  (Mot. 4-17.)  Again, Rice is wrong.  The restrictions in the covenants not to compete and not to solicit are commercially reasonable and enforceable.

### (1) *AWP Sufficiently Alleged All Elements of a Breach of Contract Claim.*

In arguing that AWP has failed to allege that he breached his contract (Mot. 13) Rice ignores virtually all of the allegations in the Complaint.  He cites to a single paragraph as supposedly constituting the "sum total of AWP's allegations in this regard." (*Id.*)  AWP pleaded all of the elements of a breach of contract, including a material breach by Rice.  AWP alleged that "Rice breached his contractual obligations to AWP" by "disclosing or using the confidential and proprietary trade secret information of AWP prior to and following the termination of his employment." (Compl. ¶ 57.)  AWP also alleged that Rice and SJK diverted multiple employees, customers, and business from AWP to SJK in a short period of time.  (*Id.* ¶¶ 46-49.)  AWP alleged further that Rice improperly used or disclosed its confidential and proprietary trade secret information.  (*Id.* ¶ 13.)

All of these allegations must be accepted as true.  *Iqbal*, 556 U.S. at 679.  There is no question that AWP alleged that Rice breached his agreement with AWP.  *See Cairns v. Ohio Sav. Bank*, 109 Ohio App. 3d 644, 648, 672 N.E.2d 1058, 1061 (1996) (allegations of breach in the complaint stated claim for breach of contract).

**(2)** ***Whether The Agreement Is Enforceable Should Not Be Decided
on a Motion to Dismiss.***

Presumably recognizing the lack of merit to his argument that AWP did not plead a

breach, Rice devotes the majority of his motion to arguing that the Rice Agreement is not

enforceable under Virginia law.  (Mot. 4-17.)  As a predicate matter, Rice's argument fails

because the issue of enforceability must be determined after evidence has been presented, not on

a motion to dismiss.

"[T]he determination of whether a covenant not to compete is valid is fact specific."

*Zuccari, Inc. v. Adams*, 42 Va. Cir. 132 (1997).  "The language of the non-compete agreement

[is] considered in the context of the facts of the specific case."  *Modern Environments, Inc. v.

Stinnett*, 263 Va. 491, 494-95, 561 S.E.2d 694, 696 (2002).  "[L]anguage deemed enforceable in

a case may be overbroad and unenforceable in a different factual context.  Without full

consideration of the factual circumstances of each case, the cases seem inconsistent."  *Daston

Corp. v. MiCore Solutions, Inc.*, 80 Va. Cir. 611, *5 (Fairfax Co. 2010); se*e also Combined Ins.

Co. of Am. v. Wiest*, 578 F. Supp. 2d 822, 831 (W.D. Va. 2008) (identifying "the factual nature of

[defendant's] argument" regarding the breadth of his restrictive covenants as reason that it was

"inappropriate for resolution" on a motion to dismiss); *Dodge Data & Analytics LLC v. iSqFt,

Inc,* No. 1:15-cv-698, 2016 WL 1702326 at *13 (S.D. Ohio April 28, 2016) ("In determining

whether restrictive covenants should be enforced, the facts of each case are paramount, and

therefore it is inappropriate to decide these issues on a motion to dismiss.").

The Supreme Court of Virginia recently addressed this issue after the trial court granted a

demurrer on the grounds that an employment agreement's restrictive covenants were "overbroad

on their face."  *Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 143, 747 S.E.2d 804, 808 (2013).

Reversing, the Supreme Court held that "a demurrer has *one* purpose—to determine whether a

complaint states a cause of action upon which the requested relief may be granted." *Id.* at 145, 747 S.E.2d at 809 (emphasis in original).  The trial court could not determine whether the agreement was enforceable without permitting the plaintiff "to present evidence to demonstrate that the restraints are no greater than necessary to protect its legitimate business interests." *Id.* Because a motion to dismiss "does not permit the trial court to evaluate and decide the merits of the claim" set forth in a complaint "the circuit court erred when it sustained [defendant]'s demurrer on the ground that 'the provision is unenforceable' as a matter of law and dismissed the entire complaint for that reason." *Id.*

The cases upon which Rice relies support this view.  (Mot. 4-17.)  Many show that the courts ruled on enforceability only after hearing evidence upon which it could make a determination.  *See, e.g., Single Source Packaging, LLC v. Cain,* 2003-Ohio-4718 (appeal of summary judgment); *Cintas Corp. v. Perry,* 2004 U.S. Dist. LEXIS 17842,  2004 WL 2032124 (N.D. Ill. Aug. 19, 2004) (applying Ohio law, denial of motion for preliminary injunction, decided after an evidentiary hearing and submission of deposition testimony of five witnesses); *Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.,* 270 Va. 246, 618 S.E.2d 340, (2005) (appeal of trial court's denial of motion for a temporary injunction that had been decided after an *ore tenus* hearing).[4]

---

[4] *See also Richardson v. Paxton Co.,* 203 Va. 790, 127 S.E.2d 113 (1962) (appeal of trial court's grant of injunctive relief that had been decided after hearing the evidence *ore tenus*); *Premier Assoc., Ltd. v. Loper,* 149 Ohio App. 3d 660, 2002-Ohio-5538, 778 N.E.2d 630 (appeal of grant of summary judgment); *Am. Bldg. Serv., Inc. v. Cohen,* 78 Ohio App. 3d 29, 603 N.E.2d 432, (1992) (appeal of grant of injunction); *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick,* 239 Va. 369, 389 S.E.2d 467, (1990) (reversal of trial courts' denial of injunctive relief after "considering the restriction . . . in light of the evidence"); *Roanoke Eng'g Sales Co. v. Rosenbaum,* 223 Va. 548, 290 S.E.2d 882, (1982) (reversal of trial courts' denial of injunctive relief that had been decided after trial *ore tenus*); *Raimonde v. Van Vlerah,* 42 Ohio St. 2d 21, 325 N.E.2d 544, (1975) (reversal of judgment of court of appeals denying the trial court's grant of injunctive relief); *Modern Environments, Inc. v. Stinnett*, 263 Va. 491, 561 S.E.2d 694 (2002) (affirmation of trial court's grant of demurrer that had been decided after briefing and argument,

AWP has alleged that it entered into a valid and enforceable contract with Rice.  (Compl. ¶ 55.)  Whether the covenants are unenforceable, as Rice argues, depends on this Court's determination of whether they are reasonable.  That determination cannot be made without the presentation of evidence.  Accordingly, Rice's motion to dismiss must be denied.

### (3) *The Restrictive Covenants Are Valid and Enforceable.*

Even if this Court considers the substance of the three covenants at this early stage, they all are enforceable.  There is no dispute that the Rice Agreement provides that it is governed by Ohio law.  (Compl. Ex. A § 3(c), Mot. p. 4 n. 1.)  Virginia "generally enforces a contractual choice of law provision, provided the jurisdiction chosen is reasonably related to the purpose of the agreement." *JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 697, 702 (E.D. Va. 2007) (applying California law as contractually specified).

Rice argues that Virginia law should apply because "some aspects of Ohio law [regarding modification] violate the public policy of Virginia and therefore cannot be applied."  (Mot. p. 4 n.1.)  While Rice is mistaken, as discussed below, there is no substantive difference in the law of Ohio and Virginia regarding whether the covenants are reasonable and enforceable. Consequently, whether this Court applies Ohio or Virginia law, the result is the same.

Both Ohio and Virginia undertake the same basic analysis to determine whether a restrictive covenant is reasonable.  The restraint must: (1) be no greater than necessary to protect

_____

(continued…)

noting that "each case must be determined on its own facts"); *Brentlinger Enterprises v. Curran,* 141 Ohio App. 3d 640, 752 N.E.2d 994, (2001) (appeal from judgment denying injunctive relief after trial); *Jacono v. Invacare Corp.*, 2006-Ohio-1596 (appeal from judgment denying injunctive relief after hearing); *Roto-Die Co. v. Lesser,* 899 F. Supp. 1515, (W.D. Va. 1995) (motion for summary judgment decided after briefing and oral argument); *Lanmark Tech., Inc. v. Canales,* 454 F. Supp. 2d 524, (E.D. Va. 2006) (decided by this Court on summary judgment); *Phoenix Renovation Corp. v. Rodriguez*, 439 F. Supp. 2d 510, (E.D. Va. 2006) (decided on summary judgment).

the employer's legitimate business interests, (2) not be unduly burdensome on the employee's ability to earn a living, and (3) not offend sound public policy. *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 825 (E.D. Va. 2011); *Raimonde v. Van Vlerah*, 42 Ohio St. 2d 21, 26, 325 N.E.2d 544, 547 (1975). In examining the reasonableness of a covenant with regard to the interests of the employer, employee, and the public at large, both states have "long recognized the validity of agreements that restrict competition by an ex-employee if they contain reasonable geographical and temporal restrictions." *Lake Land Emp. Grp. of Akron, LLC v. Columber*, 2004-Ohio-786, ¶ 9, 101 Ohio St. 3d 242, 245, 804 N.E.2d 27, 30; *see also Simmons v. Miller*, 261 Va. 561, 580–81, 544 S.E.2d 666, 678 (2001).[5]

The considerations of duration, geographic scope, and function are not separate and distinct issues. "[N]o one factor is dispositive in the reasonableness analysis." *FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 528 (6th Cir. 2013) (applying Ohio law). "[A] single consideration that is unreasonable may be reasonable as construed in light of the other two." *Cantol, Inc. v. McDaniel*, No. 2:06CV86, 2006 WL 1213992, at *4 (E.D. Va. Apr. 28, 2006). Accordingly, the court should consider the reasonableness of the covenant on the facts of each particular case. *Raimonde*, 42 Ohio St.2d at 25, 325 N.E.2d at 547.

### (A)      The Covenant Not to Compete Is Enforceable.

The covenant not to compete provides that, for 12 months after his employment with AWP ends, Rice cannot "directly or indirectly, be employed by, provide services to" or "in any way be connected, associated, or have any interest" in "any Competitive Business" within a 120-mile radius of AWP's office in Manassas. (Compl. ¶ 22 & Ex. A § 2(c).) A "Competitive

---

[5] *Raimonde* sets forth other factors that may be considered "when a court is modifying an otherwise unreasonable covenant not to compete." *Try Hours, Inc. v. Douville*, 2013-Ohio-53, ¶ 47, 985 N.E.2d 955, 965 (citing *Rogers v. Runfola & Associates, Inc.*, 57 Ohio St. 3d 5, 8, 565 N.E.2d 540, 543 (1991)).

Business" is defined as one that competes "directly or indirectly, with any aspect of AWP's business of providing traffic control services and equipment."  (Compl. Ex. A § 2(a).)

Rice does not object to the 12-month duration or the 120-mile geographic limit in the covenant.  Both are reasonable.  "[A] one-year time limitation has been repeatedly held to be a reasonable period of time for such agreements" under Ohio law.  *Facility Servs. Sys., Inc. v. Vaiden*, 2006-Ohio-2895, ¶ 41; *see also Mike McGarry & Sons, Inc. v. Gross*, 2006-Ohio-1759, ¶ 18 ("[T]he trial court was within its power to impose a two-hour radius restriction on the noncompete provision.").  Virginia law is even more permissive.  *Meissel v. Finley*, 198 Va. 577, 95 S.E.2d 186 (1956) (five years reasonable); *Foti v. Cook*, 220 Va. 800, 263 S.E.2d 430 (1980) (two years reasonable); *Roanoke Eng'g Sales Co. v. Rosenbaum*, 223 Va. 548, 290 S.E.2d 882 (1982) (2½ years reasonable); *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 239 Va. 369, 389 S.E.2d 467 (1990) (upholding geographic scope including District of Columbia, Maryland, North Carolina, Virginia, and West Virginia).

Nor does Rice argue that the covenant unduly burdens his ability to earn a living.  The restrictions are limited to the narrow industry of "traffic control services and equipment."  Restrictions to keep former employees from "*engage[ing] in any manner* in any business competing *directly or indirectly*" have been upheld.  *Rash v. Hilb, Rogal & Hamilton Co. of Richmond,* 251 Va. 281, 285, 467 S.E.2d 791, 794 (1996)) (upholding covenant that prohibited competition "*directly or indirectly* as an owner, stockholder, director, employee, partner, agent, broker, consultant *or other participant*") (emphasis in original).

Rice's lone objection is to the functional restriction, which bars him from undertaking "any employment" with a competing business during this 12-month period.  (Mot. 7-9.)  He cites to a superfluous example that he is barred from working for a competitor of AWP even if he is

employed as a "janitor." (Mot. 7, 8.) There is no allegation that Rice is employed as a janitor at

SJK. Rather, AWP alleged that Rice is performing the same function as he did with AWP,

utilizing confidential and proprietary trade secret information to harm AWP. (Compl. ¶¶ 17, 19,

39, 45-47, 49, 57.) The cases that Rice cites for his "janitor problem" are distinguishable

because they involved covenants that were geographically unlimited or the courts made a

determination on enforceability only after hearing evidence to determine whether the covenant

was reasonable under the circumstances. *See e.g.*, *Cliff Simmons Roofing, Inc. v. Cash*, 49 Va.

Cir. 156 (Va. Cir. Ct. 1999) (testimony presented that provision had no geographic boundaries);

*Lanmark Tech., Inc. v. Canales*, 454 F. Supp. 2d 524, 525 (E.D. Va. 2006) (decided by this Court

on summary judgment). Finally, because Ohio law governs the Rice Agreement, even if this

Court were to find the covenant overly broad, it has the ability to modify it.

 The covenant not to compete is reasonable and narrowly tailored to protect AWP's

"legitimate interest in protection against direct competition by a former employee with

confidential information gained through his employment." *Brainware*, 808 F. Supp. 2d at 829;

*see also Rogers v. Runfola & Associates, Inc.*, 57 Ohio St. 3d 5, 8, 565 N.E.2d 540, 544 (1991)

(recognizing legitimate business interest when an employer "invested time and money" to

develop and train employees who had "direct contact" with the employer's clientele). With more

than 40 branch offices and 2,500 employees nationwide (Compl. ¶¶ 10-11), AWP relies on

managers such as Rice to maintain daily operations. It must be able to give them access to

pricing, customer, and other confidential and proprietary trade secret information without fear

that they will immediately disclose such information to a competitor and damage AWP. *See UZ*

*Engineered Products Co. v. Midwest Motor Supply Co.*, 147 Ohio App. 3d 382, 2001-Ohio-8779,

770 N.E.2d 1068, ¶ 39 (10th Dist.) ("[A]n employer has a legitimate interest in preventing a

former employee from using the skill, experience, training, and confidential information the former employee has acquired during the employee's tenure with his employer in a manner advantageous to a competitor in attracting business. . . .").

Rice does not dispute that he had knowledge of AWP's trade secrets and confidential information. "When employees have access to confidential information, such access provides employers with a legitimate business interest in a restrictive covenant and renders covenants not to compete more reasonable." *Capital One Fin. Corp. v. Kanas*, 871 F. Supp. 2d 520, 534 (E.D. Va. 2012). Courts have upheld covenants like the one in the Rice Agreement because "they make the guarding of a trade secret easier since they remove the opportunity for the former employee to pass on the trade secret to the competition, either malevolently or benevolently." *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 562 (4th Cir. 1990).

Nor does Rice dispute that, as a manager for AWP for more than five years, he developed relationships with customers and was familiar with all aspects of AWP's operations in his territory. "[N]on-competition agreements are also justified where the employee comes into personal contact with his employer's customers." *Blue Ridge Anesthesia*, 239 Va. at 372–73, 389 S.E.2d at 469. The Virginia Supreme Court upheld a complete restriction from working with a competitor for 30 months because a manager had "access to . . . lists of customers, lists of suppliers, detailed knowledge of overhead factors, pricing policies and bidding techniques" that made him "a formidable competitor" to his former employer. *Roanoke Eng'g*, 223 Va. at 553, 290 S.E.2d at 885. This is even more important with managerial level employees like Rice. *Brainware*, 808 F. Supp. 2d at 827 ("business interests include plaintiff's ability to discuss with its management-level employees trade secrets, proprietary information, and candid assessments

of its product lines and customer accounts without fear that the employees will use such information to benefit direct competitors or become competitors themselves").

Equally incorrect is Rice's argument that the covenant not to compete is overly broad because it is not limited to "employment." (Mot. 8-9.) Courts recognize that a covenant limited solely to "employment" would allow Rice to share AWP's valued confidential and proprietary trade secret information with competitors as a consultant, investor, or in any number of other roles. *See Foti*, 220 Va. at 807, 263 S.E.2d at 434 (rejecting defendant's argument to narrow a functional restriction because "such an interpretation would permit [the defendant] to circumvent the covenant and accomplish indirectly what he could not accomplish directly"). The Supreme Court of Virginia upheld as reasonable a provision almost identical to that in the Rice Agreement, which provided that the former employee "shall not *directly or indirectly* as an owner, stockholder, director, employee, partner, agent, broker, consultant or other participant, . . . . *engage in any manner* in any business competing *directly or indirectly* with [plaintiff]." *Rash*, 251 Va. at 285, 467 S.E.2d at 794.[6]

Finally, Rice cites *Roto-Die Co. v. Lesser*, 899 F. Supp. 1515 (W.D. Va. 1995), and argues that the covenant not to compete violates Virginia public policy. (Mot. 6.) *Roto-Die* is wholly inapplicable. In that case, the restriction was world-wide in geographic scope and lasted for five years. *Id.* at 1521. The Rice Agreement is limited to 12 months and a 120-mile radius

---

[6] *See also New River Media Group, Inc. v. Knighton*, 245 Va. 367, 368, 429 S.E.2d 25, 26 (1993) (employee "would not engage in a business that competed"); *Rogers*, 57 Ohio St. 3d at 5, 9, 565 N.E.2d at 544 (prohibiting former employee from "engaging in [competitive business] as a business, as employees, or otherwise"); *Blue Ridge Anesthesia*, 239 Va. at 370, 389 S.E.2d at 468 (1990) (employee will not "be employed by or act on behalf of" any competitor); *Roanoke Eng'g*, 223 Va. at 551, 290 S.E.2d at 883 (employee will not "directly or indirectly ... be employed by" any competing business); and *Meissel*, 198 Va. at 579, 95 S.E.2d at 187 (employee will not "enter into the insurance business ... or associate himself or herself with any" insurance agency).

of Rice's office in Manassas.  It comports with Virginia public policy because it strikes an

appropriate balance between protecting AWP's interests without oppressing Rice.

### (B)  The Covenant Not to Solicit Customers Is Enforceable.

The covenant not to solicit AWP customers similarly is reasonable.  It provides that for

12 months after leaving AWP, Rice may not "solicit or accept any business, in competition with

AWP" for any "existing or prospective customer or client of AWP at the time of" or during the

12 months preceding the termination of Rice's employment.  (Compl. Ex. A § 2(e).)  Nor may

Rice directly solicit customers for which he was responsible.  (*Id.*)  "Solicitation clauses are

reviewed under the same standards as those developed for non-competition clauses because

solicitation is a form of competition."  *Strategic Res. v. Nevin*, 2005 U.S. Dist. LEXIS 30985 at

*10-11 (E.D. Va. 2005).

Both Ohio and Virginia recognize that "firms have a legitimate interest in protecting their

customer contacts."  *Eden Hannon*, 914 F.2d at 562.  Courts permit restricting a former

employee's ability to solicit customers when the employee had "acquired information regarding

plaintiff's products and sales practices, including pricing, that would be advantageous to a

competitor in soliciting customers, regardless whether the customers had been former or existing

customers of plaintiff or its former employees."  *UZ Engineered Products*, 770 N.E.2d at 1080.  ¶

The covenant not to solicit customers is tailored to meet AWP's legitimate interest in protecting

its customer contacts.  Rice was responsible for developing close relationships with customers

and identify potential opportunities for growth.  (Compl. ¶ 17.)  He also had access to AWP's

confidential and proprietary trade secret information including its strategic plans, customers lists,

customer information, and pricing.  (*Id.* ¶ 19.)  "When an employee, by leaving, threatens to

siphon off the former employer's customers or goodwill, the law typically permits greater

restrictions to be imposed by contract." *Capital One Fin. Corp.*, 871 F. Supp. 2d at 533 (quotation omitted).

Rice argues that the provision is facially overbroad because it prohibits him from accepting business from a "prospective customer" or "former customer" of AWP. (Mot. 11, 12.) The restriction is reasonable in light of Rice's job responsibilities and access to AWP's customer lists, strategic plans and other confidential and proprietary trade secret information. Rice knows of customers or prospective customers through working as a manager at AWP for more than five years. Ohio law recognizes AWP's interest in "limiting not only a former employee's ability to take advantage of personal relationships the employee has developed while representing the employer to the employer's established client, but also in preventing a former employee from using his former employer's customer lists or contacts to solicit new customers." *UZ Engineered Products*, 770 N.E.2d at 1080. The restriction applies "regardless whether the customers had been former or existing customers of plaintiff or its former employees." *Id.* Virginia law is the same. "It can require a great deal of time and personal contact to build a solid base of clients. If your sales representatives are free to leave the firm and try to take these clients along at any minute, this investment can be undermined and thus discouraged." *Eden Hannon*, 914 F.2d at 563. *See also Tradesmen Int'l, Inc. v. Prof'l Labor Support, LLC*, No. 10-2098, 2011 WL 2214755, at *8 (C.D. Ill. June 7, 2011) (applying Ohio law and holding that "the provisions pertaining to Prospective Customers are enforceable, to the extent they are reasonable in light of the facts and circumstances").

The cases Rice cites (Mot. 10-12) are distinguishable because they were found to be overly broad. In some instances, they were not limited to direct competitors, e.g. *BB&T Ins. Servs., Inc. v. Thomas Rutherfoord, Inc.*, 80 Va. Cir. 174 (2010), or had long or unlimited

durations, e.g., *Strategic Res.*, 2005 U.S. Dist. LEXIS 30985 at \*10 (customers for five years preceding termination), *Prof'l Investigations & Consulting Agency, Inc. v. Kingsland*, 69 Ohio App. 3d 753, 759, 591 N.E.2d 1265, 1269 (1990) (applying to former customers without any temporal limitation).  In this case, the covenant is narrowly drafted to apply to solicitation of customers for which Rice was responsible and also entities that were customers or prospective customers within the 12 months before Rice terminated his employment.

As with the covenant not to compete, the covenant not to solicit customers is reasonable because it does not unduly restrain Rice's ability to earn a living, and it comports with public policy.

### (C)      The Covenant Not to Solicit Employees Is Enforceable.

The covenant not to solicit employees is reasonable for similar reasons as the other two covenants.  It provides that for 12 months after leaving AWP Rice may not solicit current employees or those whose employment ended within the past 12 months.  (Compl. Ex. A § 2(d).) Rice argues that it is not enforceable because it is "dramatically" overbroad.  (Mot. 12.)  Rice cites to no case supporting his argument that the provision is overbroad.  Virginia courts recognize a business's legitimate interest in preventing former employees from soliciting its most experienced and high-performing employees.  *Int'l Paper Co. v. Brooks*, 63 Va. Cir. 494, at \*2 (2003).  Rice was responsible for managing his staff of more than 30 employees and ensuring compliance with safety training, which is important in the industry.  (Compl. ¶¶ 12, 17.)  Rice knew which employees were the best and used his knowledge of AWP's employee policies and compensation to recruit those employees.  (*See id.* ¶¶ 17, 19.)  Indeed, Rice has recruited at least three employees to SJK.  (*Id.* ¶ 46.)

Accordingly, the covenant not to solicit employees is reasonable in light of these circumstances and should be enforced.

**(4)** *A Virginia Court May Modify the Ohio Agreement to Render It Enforceable.*

To the extent the Court were to find one of the covenants unenforceable as written, Rice

acknowledges that Ohio law, which governs the agreement, permits "reasonable alteration."

(Mot. 14.)  He argues that, because Virginia law does not permit modification, Ohio law cannot

be applied.  (Id.)[7]  Rice is wrong.

Courts in Virginia routinely apply the law of another state if the parties to a contract

specifically agree.  In *Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection, Inc.*, No.

3:12CV146-HEH, 2012 WL 1415632, at *4 (E.D.Va. Apr. 23, 2012), this Court held that

"[a]pplying the law of a state that allows 'blue penciling' is not so repugnant to Virginia public

policy as to overcome Virginia's preference for enforcing choice-of-law and forum-selection

clauses."  *See also Jones v. Dent Wizard Int'l Corp.*, No. CL02–386, 2002 WL 32254731, *3

(Va. Cir. Ct. 2002) ("[I]t would not violate any strong public policy of Virginia to [apply the

substantive law of a different State,] even though [that State] follows the 'blue pencil' rule and

Virginia does not.").

Consequently, Ohio law applies.  Even if the Court were to find an aspect of the Rice

Agreement to be overly broad, the remedy is for the Court to modify the agreement to make it

enforceable.  Rice's motion to dismiss Count I should be denied.

**B.    AWP stated a claim for Misappropriation of Trade Secrets.**

Rice argues incorrectly that AWP made only "conclusory, boilerplate" assertions that fail

to state a claim for misappropriation of trade secrets.  (Mot. 18.)  He fails to consider all of

allegations in the Complaint.  To state a claim for misappropriation of trade secrets, a plaintiff

must establish two elements: (1) that the information in question constitutes a trade secret and (2)

_____

[7] There is no dispute that under Virginia law "unenforceable provisions may be severed from a contract and the remainder of the contract enforced."  *Daston Corp. v. MiCore Solutions, Inc.*, 80 Va. Cir. 611, *5 (Fairfax Co. 2010).

that the defendant misappropriated it.  *Marsteller v. ECS Fed., Inc.*, No. 1:13CV593 JCC/JFA, 2013 WL 4781786, at *4 (E.D. Va. Sept. 5, 2013) (denying motion to dismiss claim for misappropriation of trade secrets).  To determine whether a claim alleges the first element, Courts consider three criteria: whether the information has independent economic value; is not known or readily ascertainable by proper means; and is subject to reasonable efforts to maintain secrecy.  *Id.*  In *Marsteller* the plaintiff alleged that it "spent significant time, efforts and expense in developing" its trade secret information, that "such information is not publicly available and would not be readily ascertainable by those outside of [plaintiff]," and that it had taken steps to protect the information "by storing it on an internal, password protected server."  *Id.*  This Court held that the plaintiff sufficiently alleged a trade secret.  *Id.*

AWP alleged that it "devoted" "time, effort, and resources" "to the creation and maintenance of its confidential and proprietary trade secret information," which  it developed "[o]ver many years and through substantial time and effort."  (Compl. ¶¶ 13, 15, 81.)  AWP alleged that its trade secret information "generally is not available to those outside of AWP" and "is accessible only within the company by those having a legitimate business reason to use it;" and that it "takes active steps and uses reasonable means to safeguard its confidential and proprietary trade secret information," including having employees "sign agreements that include obligations not to disclose any such information."  (Compl. ¶¶ 13-16.)  Just as in *Marsteller*, AWP sufficiently alleged the existence of a trade secret.

AWP also alleged misappropriation, which arises either by improper acquisition, disclosure or use of a trade secret.  *Marsteller* at *5.  The court may examine the "reasonable inference" raised by the facts alleged.  *Id.*  The plaintiff in *Marsteller* alleged that a former employee took confidential information, including information about how to obtain a certain

certification, and within eight months obtained the same certification for a new employer.  The court determined that the reasonable inference from these facts was that misappropriation was plausible, not just possible.  *Id.*  ("[S]uch an unauthorized use of a competitor's trade secret documents is a well-established form of misappropriation.")

Similarly, AWP alleged that Rice "used AWP's confidential and proprietary trade secret information to help start SJK and to compete against AWP."  (Compl. ¶ 45.)  In just a few months since ending his employment with AWP, Rice and SJK successfully solicited multiple AWP employees and customers.  (*Id.* ¶¶ 46-49.)  They accomplished this through Rice's improper use of AWP's confidential and proprietary trade secret information, including pricing information, employee compensation and benefits arrangements, and a wealth of customer information and preferences that had been developed over years.  (*Id.* ¶ 13.)

AWP has sufficiently alleged that the information at issue constitutes a trade secret and that Rice misappropriated it.  Drawing all inferences in favor of AWP, Rice's Motion to Dismiss Count IV must be denied.

### C.    AWP's Claim for Business Conspiracy Remains Valid.

Rice's Motion to Dismiss AWP's claim for Business Conspiracy also must be denied.  It is solely premised on the other claims for breach of contract and misappropriation being "legally deficient."  (Mot. at 21.)  Because AWP validly pleaded those claims, the business conspiracy claim is valid as well.[8]

---

[8] Under Virginia Code § 18.2–500, "[a]ny person who [is] injured in his reputation, trade, business, or profession by reason of a violation of § 18.2–499" may seek relief in a civil court. Va. Code § 18.2–500(A).  The relevant portion of Virginia Code § 18.2–499 imposes liability on "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of ... willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever. . . ."  Va. Code § 18.2–499(A).  To ultimately prevail under this statute a plaintiff must plead the following elements: "(1) concerted action; (2)

## IV.    CONCLUSION AND PRAYER

For the reasons set forth herein, AWP respectfully requests that the Court deny Rice's

Motion to Dismiss Counts I, IV and V.

Dated:  June 8, 2016                          Respectfully submitted,

                                              /s/
                                              Bernard J. DiMuro, Esq.
                                              VSB No. 18784
                                              *Counsel for Plaintiff AWP, Inc.*
                                              DiMuroGinsberg, P.C.
                                              1101 King Street, Suite 610
                                              Alexandria, VA 22314
                                              Telephone: (703) 684-4333
                                              Facsimile: (703) 548-3181
                                              bdimuro@dimuro.com


                                              *Admitted Pro Hac Vice:*

                                              Robert P. Ducatman, Esq.
                                              Jeffrey Saks, Esq.
                                              Candice M. Reder, Esq.
                                              Jones Day
                                              North Point
                                              901 Lakeside Avenue
                                              Cleveland, OH 44114-1190
                                              Telephone: (216) 586-3939
                                              Facsimile:  (216) 579-0212
                                              rducatman@jonesday.com
                                              jsaks@jonesday.com
                                              creder@jonesday.com

---

(continued…)

legal malice; and (3) causally related injury." *Schlegel v. Bank of America*, 505 F. Supp. 2d 321, 325 (W.D. Va. 2007).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of June, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

| | | |
|---|---|---|
| Michael J. Lorenger, Esq. | James M. Stewart, Jr., Esq. | Shawn Watkins |
| Lorenger & Carnell PLC | 4041 University Drive | 65 Donaldsburg Lane |
| 651 South Washington Street | Suite 301 | Fairfield, VA 24435 |
| Alexandria, Virginia 22314 | Fairfax, Virginia 22030 | (540) 810-2670 |
| (703) 684-1808 Phone | (540) 539-4993 Phone | swatkins@agstacker.com |
| (703) 684-1805 Fax | (540) 678-5595 Fax | |
| mlorenger@lorengercarnell.com | jmstewart2@comcast.net | |

*Counsel for Defendant David Samuel Rice*    *Counsel for SJK Services LLC and Keith Frances Dowling*

/s/
Bernard J. DiMuro, Esq.
VSB No. 18784
*Counsel for Plaintiff AWP, Inc.*
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
Telephone:  (703) 684-4333
Facsimile:   (703) 548-3181
bdimuro@dimuro.com