IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AWP, Inc.,<br><br>        **Plaintiff,**<br><br>       v.<br><br>SJK SERVICES LLC, DAVID SAMUEL RICE, KEITH FRANCIS DOWLING and SHAWN WATKINS,<br><br>        **Defendants.** | CASE NO. 1:16-cv-332 (TSE/MSN) |

**PLAINTIFF AWP, INC.'S MEMORANDUM IN OPPOSITION TO THE MOTION TO DISMISS FILED BY SJK SERVICES LLC AND KEITH FRANCIS DOWLING**

The Motion to Dismiss filed by Defendants SJK Services LLC ("SJK") and Keith Francis Dowling (together, "Defendants") must be denied. AWP alleged valid claims against SJK and Dowling for tortious interference with contract, misappropriation of trade secrets, and conspiracy to injure in trade or business. Defendants' motion to dismiss misapplies relevant law and is without merit. It lacks any argument to support dismissal of Count IV for misappropriation of trade secrets, which not only requires the denial of the motion to dismiss that claim but the claim for conspiracy as well.

The majority of Defendants' motion is devoted to arguing that one of two employment agreements is unenforceable. Putting aside that this determination should be made only after considering evidence and not on a motion to dismiss, settled law demonstrates that the agreement is reasonable under the facts alleged in the Complaint. Moreover, Defendants do not argue, let alone demonstrate, that the second agreement is unenforceable. Consequently, AWP has alleged a valid claim for tortious interference requiring that the motion be denied.

I.         **AWP'S COMPLAINT**[1]

AWP has spent 25 years growing its business from a small, local security company to the largest comprehensive traffic control company in the United States, with operations in Virginia and 17 other states. (Compl. ¶ 10.) AWP expended substantial time and effort developing confidential and proprietary trade secret information related to the services it provides, including its strategic plans for developing and marketing its services, customer and prospective customer lists, customer information and preferences, pricing, and employee compensation and benefits. (*Id.* ¶¶ 12, 13.) AWP protects this information by limiting its access only to employees that have a legitimate business reason to use it and requires those employees sign agreements containing obligations not to disclose or use the information for another purpose. (*Id.* ¶ 14.)

David "Sammy" Rice worked as a manager at AWP from May 2010 through December 2015, primarily out of AWP's Manassas, Virginia office. (*Id.* ¶¶ 17, 18, 26.) His responsibilities included managing all staff out of the Manassas office, ensuring safety training and compliance, working closely with customers, and identifying potential opportunities for growth of AWP's business. (*Id.* ¶ 17.) Shawn Watkins was a regional sales manager for AWP from February 2011 through November 2012 and was responsible for sales throughout Virginia, North Carolina, South Carolina, and Maryland. (*Id.* ¶ 27.)

As part of their responsibilities, Rice and Watkins had access to AWP's confidential and proprietary trade secret information. (*Id.* ¶¶ 19, 29.) Rice acknowledged this in his Confidentiality, Non-Competition & Non-Solicitation Agreement with AWP ("Rice Agreement," Compl. Ex. A), which he signed on April 15, 2013. (*Id.* ¶¶ 20, 21.) Watkins acknowledged this

---

[1] With consent of all defendants, AWP has filed a motion for leave to amend its complaint to delete its cause of action for unfair competition. The other five causes of action will remain and the allegations are unchanged. Citations to allegations in the Complaint and proposed Amended Complaint are identical.

in an agreement with AWP ("Watkins Agreement," Compl. Ex. B), signed on December 27, 2012. (Id. ¶¶ 28-30.) Moreover, both Rice and Watkins agreed not to disclose or use any confidential or proprietary trade secret information of AWP for any purpose. (Id. ¶¶ 21, 30, 70.)

Nevertheless, Rice and Watkins disclosed, used and divulged AWP's confidential and proprietary trade secret information by sharing it with Defendants SJK and Keith Dowling. Dowling was a customer of AWP. (Id. ¶¶ 36-37.) Later, Dowling decided to start a traffic services business, SJK Services LLC ("SJK"), which he incorporated in Virginia on September 14, 2015. (Id. ¶¶ 38, 41.) Rice assisted in the creation of SJK even though he was still employed at AWP. (Id. ¶ 43.) Less than three months after SJK's incorporation, on December 4 2015, Rice voluntarily terminated his employment with AWP. (Id. ¶ 26.) He represented that he was going into business for himself and that he would honor his obligations under the Rice Agreement. (Id.) Both of these statements were false. Rice and Watkins, who previously left AWP, then used AWP's confidential and proprietary information to solicit customers, business, and employees away from AWP to SJK. (Id. ¶¶ 45-49, 52, 64, 88, 90.) Moreover, because SJK is a direct competitor, the continued use and disclosure of AWP's confidential and proprietary trade secret information is inevitable. (Id. ¶ 52.)

AWP brought this action against Rice, Watkins, Dowling and SJK. It alleged four causes of action against Dowling and SJK, for tortious interference with contract, misappropriation of

trade secrets, conspiracy to injure in trade or business, and unfair competition.[2]  Defendants have moved to dismiss all four claims against them.[3]

AWP's claim for tortious interference of contract (Count III) is based upon Defendants' interference with the Rice Agreement and the Watkins Agreement.  (*Id.* ¶¶ 20, 28, 68 & Ex. A, Ex. B.)  AWP alleged that each agreement "is a valid and enforceable contract" (*Id.* ¶¶ 55, 62) and that AWP fully performed its obligations under the agreement (*Id.* ¶¶ 56, 63).  AWP also alleged that SJK and Dowling knew of the existence of covenants in these agreements (*Id.* ¶ 71) and nevertheless "permitted, caused, encouraged, and/or induced" Rice and Watkins to breach those covenants (*Id.* ¶ 72).  AWP alleged further that both Rice and Watkins breached their contractual obligations to AWP (*Id.* ¶¶ 57, 64, 72) and that AWP was harmed thereby (*Id.* ¶¶ 77).

In Count IV of the Complaint, AWP alleged that Defendants misappropriated its confidential and proprietary trade secret information.  AWP alleged that this information "includes but is not limited to, its strategic plans for marketing and developing its products and services, lists of customers or prospective customers, customer information and preferences, pricing arrangements, and employee compensation" and was "developed only after AWP expended substantial cost and effort over a period of many years."  (*Id.* ¶¶ 13, 81.)  AWP also alleged that it took reasonable steps to protect this information, which is "accessible only within the company by those having a legitimate business reason to use it."  (*Id.* ¶¶ 14, 16, 82.)  AWP alleged that "Dowling hired Rice and Watkins with the goal of misappropriating AWP's

---

[2] AWP also alleged causes of action against Rice and Watkins for breach of contract, misappropriation of trade secrets, conspiracy to injure in trade or business and unfair competition.  These are not the subject of this Motion to Dismiss.  The breach of contract, misappropriation, conspiracy, and unfair competition claims against Rice are the subject of his motion to dismiss pending before this Court. (ECF Nos. 20-21.)  Watkins has not moved to dismiss any of the claims against him.

[3] In light of AWP's proposed Amended Complaint, the motion is moot as to Count VI regarding unfair competition but remains as to Counts III, IV and V.

confidential and proprietary trade secret information." (*Id.* ¶¶ 39.) Finally, AWP alleged that Defendants willfully and maliciously "used improper means to misappropriate and exploit AWP's confidential and proprietary trade secret information to benefit themselves and others," damaging AWP as a result. (*Id.* ¶¶ 83-85.)

In Count V, AWP alleged its cause of action against the Defendants for conspiracy. Referencing its claims for tortious interference with contract and misappropriation of trade secrets, AWP alleged that the Defendants, together with Rice and Watkins, conspired to wrongfully start a competing business, solicit AWP's employees and customers "and otherwise willfully and maliciously injure AWP in its reputation, trade, or business." (*Id.* ¶ 88.)

## II.     STANDARD OF REVIEW

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "should assume the[] veracity" of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Alleging plausible grounds for a claim "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to prove the alleged claim." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d 443, 449 (E.D. Va. 2009). The issue is not whether the non-moving party ultimately will prevail but whether it is entitled to offer evidence to support its claims. *Manchanda v. Hays Worldwide, LLC*, No. 1:14CV1339 JCC/TCB, 2014 WL 7239095, at *1 (E.D. Va. Dec. 17, 2014).

On a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer Fire Dept., Inc. v. Montgomery County, Md.*, 684 F.3d 462, 467 (4th Cir.

2012). To state a valid claim, a party is required to plead more than "labels and conclusions," but "need not provide detailed factual allegations." *The Collection, LLC v. Valley Bank,* No. 4:09CV00007, 2009 WL 2357145, at *2 (W.D. Va. July 31, 2009). "[E]ven if doubtful in fact," the factual allegations, taken as true, need merely to "raise the right to relief above the speculative level." *Colon Health Centers of Am., LLC v. Hazel,* 733 F.3d 535, 545 (4th Cir. 2013) (citing *Twombly*, 550 U.S. at 555).

    III.       **DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED.**

        A.      **AWP Stated a Claim for Tortious Interference With Contract.**

The elements of a claim for tortious interference with contractual relations are (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) damage to the party whose relationship or expectancy has been disrupted. *Schaecher v. Bouffault*, 290 Va. 83, 106, 772 S.E.2d 589, 602 (2015). Defendants' motion does not address which of these elements is inadequately pleaded, or even articulate a basis for dismissing Count III. The majority of Defendants' motion argues that three restrictive covenants in the Rice Agreement are unenforceable. (Mot. 6-10, 13-15.) To the extent that Defendants argue that the lack of a valid contract requires dismissal of the claim for tortious interference, they are wrong. The Rice Agreement is valid and enforceable.

Moreover, Defendants have not alleged that the Watkins Agreement is unenforceable. Presumably that is because AWP has not alleged that Watkins violated any of the three restrictive covenants that Defendants argue are invalid as in the Rice Agreement. Instead, AWP alleged that Watkins breached other provisions in his Agreement, which Defendants do not

challenge. (Compl. ¶¶ 29-31, 64.) Because Defendants' have not demonstrated that the Watkins Agreement is invalid, AWP alleged a sufficient claim for tortious interference, and Defendants' motion must be denied.

### (1) *Whether The Agreements Are Enforceable Should Not Be Decided on a Motion to Dismiss.*

Even were it necessary to consider the enforceability of the Rice Agreement, Defendants' argument fails because enforceability must be determined after evidence has been presented, not on a motion to dismiss. "[T]he determination of whether a covenant not to compete is valid is fact specific." *Zuccari, Inc. v. Adams*, 42 Va. Cir. 132, at *2 (1997). "The language of the non-compete agreement [is] considered in the context of the facts of the specific case." *Modern Environments, Inc. v. Stinnett*, 263 Va. 491, 494-95, 561 S.E.2d 694, 696 (2002). "[L]anguage deemed enforceable in a case may be overbroad and unenforceable in a different factual context. Without full consideration of the factual circumstances of each case, the cases seem inconsistent." *Daston Corp. v. MiCore Solutions, Inc.*, 80 Va. Cir. 611, *5 (Fairfax Co. 2010); se*e also Combined Ins. Co. of Am. v. Wiest*, 578 F. Supp. 2d 822, 831 (W.D. Va. 2008) (identifying "the factual nature of [defendant's] argument" regarding the breadth of his restrictive covenants as reason that it was "inappropriate for resolution" on a motion to dismiss).

The Supreme Court of Virginia recently addressed this issue after the trial court granted a demurrer on the grounds that an employment agreement's restrictive covenants were "overbroad on their face." *Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 143, 747 S.E.2d 804, 808 (2013). Reversing, the Supreme Court held that "a demurrer has *one* purpose—to determine whether a complaint states a cause of action upon which the requested relief may be granted." *Id.* at 145, 747 S.E.2d at 809 (emphasis in original). The trial court could not determine whether the agreement was enforceable without permitting the plaintiff "to present evidence to demonstrate

that the restraints are no greater than necessary to protect its legitimate business interests." *Id.* Because a motion to dismiss "does not permit the trial court to evaluate and decide the merits of the claim" set forth in a complaint "the circuit court erred when it sustained [defendant]'s demurrer on the ground that 'the provision is unenforceable' as a matter of law and dismissed the entire complaint for that reason." *Id.*

AWP has alleged that its agreements with Rice and Watkins are valid and enforceable. (Compl. ¶¶ 55, 62.) Whether the covenants are unenforceable, as Defendants argue, depends on this Court's determination of whether they are reasonable. That determination cannot be made without the presentation of evidence. Accordingly, Defendants' motion to dismiss must be denied.

### (2) *The Restrictive Covenants Are Valid and Enforceable.*

Even if this Court considers the substance of the Rice Agreement at this early stage, it is enforceable. There is no dispute that the Rice Agreement provides that it is governed by Ohio law. (Compl. Ex. A § 3(c), Mot. p. 5-6.) As Defendants admit (Mot. 4), Virginia "generally enforces a contractual choice of law provision, provided the jurisdiction chosen is reasonably related to the purpose of the agreement." *JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 697, 702 (E.D. Va. 2007) (applying California law as contractually specified).

Defendants argue that Virginia law should apply because the Watkins Agreement does not provide that it is governed by Ohio law, and AWP filed suit in Virginia and alleged Virginia common law and statutory claims. (Mot. 6.) They rely exclusively on *Paul Bus. Sys. Inc. v. Cannon U.S.A., Inc.*, 240 Va. 337, 397 S.E.2d 804 (1990), which is wholly inapposite. That case involved a forum selection clause, not a choice of law provision. Moreover, there is no substantive difference in the law of Ohio and Virginia regarding whether the covenants are

reasonable and enforceable. Consequently, whether this Court applies Ohio or Virginia law, the result is the same.

Both Ohio and Virginia undertake the same basic analysis to determine whether a restrictive covenant is reasonable. The restraint must: (1) be no greater than necessary to protect the employer's legitimate business interests, (2) not be unduly burdensome on the employee's ability to earn a living, and (3) not offend sound public policy. *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 825 (E.D. Va. 2011); *Raimonde v. Van Vlerah*, 42 Ohio St. 2d 21, 26, 325 N.E.2d 544, 547 (1975). In examining the reasonableness of a covenant with regard to the interests of the employer, employee, and the public at large, both states have "long recognized the validity of agreements that restrict competition by an ex-employee if they contain reasonable geographical and temporal restrictions." *Lake Land Emp. Grp. of Akron, LLC v. Columber*, 2004-Ohio-786, ¶ 9, 101 Ohio St. 3d 242, 245, 804 N.E.2d 27, 30; *see also Simmons v. Miller*, 261 Va. 561, 580–81, 544 S.E.2d 666, 678 (2001).[4]

The considerations of duration, geographic scope, and function are not separate and distinct issues. "[N]o one factor is dispositive in the reasonableness analysis." *FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 528 (6th Cir. 2013) (applying Ohio law). "[A] single consideration that is unreasonable may be reasonable as construed in light of the other two." *Cantol, Inc. v. McDaniel*, No. 2:06CV86, 2006 WL 1213992, at *4 (E.D. Va. Apr. 28, 2006). Accordingly, the court should consider the reasonableness of the covenant on the facts of each particular case. *Raimonde*, 42 Ohio St.2d at 25, 325 N.E.2d at 547.

---

[4] *Raimonde* sets forth other factors that may be considered "when a court is modifying an otherwise unreasonable covenant not to compete." *Try Hours, Inc. v. Douville*, 2013-Ohio-53, ¶ 47, 985 N.E.2d 955, 965 (citing *Rogers v. Runfola & Associates, Inc.*, 57 Ohio St. 3d 5, 8, 565 N.E.2d 540, 543 (1991)).

### (A) The Covenant Not to Compete Is Enforceable.

The covenant not to compete in the Rice Agreement provides that, for 12 months after his employment with AWP ends, Rice cannot "directly or indirectly, be employed by, provide services to" or "in any way be connected, associated, or have any interest" in "any Competitive Business" within a 120-mile radius of AWP's office in Manassas. (Compl. ¶ 22 & Ex. A § 2(c).) A "Competitive Business" is defined as one that competes "directly or indirectly, with any aspect of AWP's business of providing traffic control services and equipment." (Compl. Ex. A § 2(a).)

Defendants do not object to the 12-month duration or the 120-mile geographic limit in the covenant. Both are reasonable. "[A] one-year time limitation has been repeatedly held to be a reasonable period of time for such agreements" under Ohio law. *Facility Servs. Sys., Inc. v. Vaiden*, 2006-Ohio-2895, ¶ 41; *see also Mike McGarry & Sons, Inc. v. Gross*, 2006-Ohio-1759, ¶ 18 ("[T]he trial court was within its power to impose a two-hour radius restriction on the noncompete provision."). Virginia law is even more permissive. *Meissel v. Finley*, 198 Va. 577, 95 S.E.2d 186 (1956) (five years reasonable); *Foti v. Cook*, 220 Va. 800, 263 S.E.2d 430 (1980) (two years reasonable); *Roanoke Eng'g Sales Co. v. Rosenbaum*, 223 Va. 548, 290 S.E.2d 882 (1982) (2½ years reasonable); *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 239 Va. 369, 389 S.E.2d 467 (1990) (upholding geographic scope including District of Columbia, Maryland, North Carolina, Virginia, and West Virginia).

Nor do Defendants argue that the covenant unduly burdens Rice's ability to earn a living. Defendants' lone objection is to the functional restriction, which bars Rice from undertaking "any employment" with a competing business during this 12-month period. (Mot. 7-9.) The Supreme Court of Virginia upheld as reasonable a provision almost identical to that in the Rice Agreement, which provided that the former employee "shall not *directly or indirectly* as an owner, stockholder, director, employee, partner, agent, broker, consultant or other participant, . .

*. . engage in any manner* in any business competing *directly or indirectly* with [plaintiff]." *Rash v. Hilb, Rogal & Hamilton Co. of Richmond,* 251 Va. 281, 285, 467 S.E.2d 791, 794 (1996).

The cases Defendants cite do not support dismissal. Although AWP "must prove a legitimate business interest" supporting the covenant (Mot. 8), it has sufficiently alleged one in its Complaint, which cannot be disproven on a motion to dismiss. The cases upon which Defendants rely decided enforceability only after hearing evidence to determine whether the covenant was reasonable under the circumstances. *See, e.g., Home Paramount Pest Control Companies, Inc. v. Shaffer*, 282 Va. 412, 718 S.E.2d 762 (2011) (decided after evidentiary hearing); *Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.,* 270 Va. 246, 618 S.E.2d 340 (2005) (appeal of trial court's denial of motion for a temporary injunction that had been decided after an *ore tenus* hearing). Finally, because Ohio law governs the Rice Agreement, even if this Court were to find the covenant overly broad, it has the ability to modify it.

The covenant not to compete in the Rice Agreement is reasonable and narrowly tailored to protect AWP's "legitimate interest in protection against direct competition by a former employee with confidential information gained through his employment." *Brainware*, 808 F. Supp. 2d at 829. With more than 40 branch offices and 2,500 employees nationwide (Compl. ¶¶ 10-11), AWP relies on managers such as Rice to maintain daily operations. It must be able to give them access to pricing, customer, and other confidential and proprietary trade secret information without fear that they will immediately disclose such information to a competitor and damage AWP. *See UZ Engineered Products Co. v. Midwest Motor Supply Co.*, 147 Ohio App. 3d 382, 2001-Ohio-8779, 770 N.E.2d 1068, ¶ 39 (10th Dist.) ("[A]n employer has a legitimate interest in preventing a former employee from using the skill, experience, training, and

confidential information the former employee has acquired during the employee's tenure with his employer in a manner advantageous to a competitor in attracting business. . . .").

Defendants do not dispute that Rice has knowledge of AWP's trade secrets and confidential information. "When employees have access to confidential information, such access provides employers with a legitimate business interest in a restrictive covenant and renders covenants not to compete more reasonable." *Capital One Fin. Corp. v. Kanas*, 871 F. Supp. 2d 520, 534 (E.D. Va. 2012). Courts have upheld covenants like the one in the Rice Agreement because "they make the guarding of a trade secret easier since they remove the opportunity for the former employee to pass on the trade secret to the competition, either malevolently or benevolently." *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 562 (4th Cir. 1990).

Nor do Defendants dispute that, as a manager for AWP for more than five years, Rice developed relationships with customers and was familiar with all aspects of AWP's operations in his territory. The Virginia Supreme Court upheld a complete restriction from working with a competitor for 30 months because a manager had "access to . . . lists of customers, lists of suppliers, detailed knowledge of overhead factors, pricing policies and bidding techniques" that made him "a formidable competitor" to his former employer. *Roanoke Eng'g,* 223 Va. at 553, 290 S.E.2d at 885. This is even more important with managerial level employees like Rice. *Brainware*, 808 F. Supp. 2d at 827 (stating that legitimate business interests "include plaintiff's ability to discuss with its management-level employees trade secrets, proprietary information, and candid assessments of its product lines and customer accounts without fear that the employees will use such information to benefit direct competitors or become competitors themselves").

Defendants argue that AWP "fails to produce any legitimate business interest for prohibiting Rice from working in any capacity with any person, entity or business that is in competition with AWP." (Mot. 8.) This, too, is wrong. Courts recognize that a covenant limited solely to "employment" would allow Rice to share AWP's valued confidential and proprietary trade secret information with competitors as a consultant, investor, or in any number of other roles. *See Foti*, 220 Va. at 807, 263 S.E.2d at 434 (rejecting defendant's argument to narrow a functional restriction because "such an interpretation would permit [the defendant] to circumvent the covenant and accomplish indirectly what he could not accomplish directly").[5]

The covenant not to compete in the Rice Agreement comports with public policy and is enforceable because it strikes an appropriate balance between protecting AWP's interests without oppressing Rice.

### (B) The Covenant Not to Solicit Customers Is Enforceable.

The covenant not to solicit AWP customers in the Rice Agreement similarly is reasonable. It provides that for 12 months after leaving AWP, Rice may not "solicit or accept any business, in competition with AWP" for any "existing or prospective customer or client of AWP at the time of" or during the 12 months preceding the termination of Rice's employment. (Compl. Ex. A § 2(e).) Nor may Rice directly solicit customers for which he was responsible. (*Id.*) "Solicitation clauses are reviewed under the same standards as those developed for non-

---

[5] *See also New River Media Group, Inc. v. Knighton*, 245 Va. 367, 368, 429 S.E.2d 25, 26 (1993) (employee "would not engage in a business that competed"); *Rogers*, 57 Ohio St. 3d at 5, 9, 565 N.E.2d at 544 (prohibiting former employee from "engaging in [competitive business] as a business, as employees, or otherwise"); *Blue Ridge Anesthesia*, 239 Va. at 370, 389 S.E.2d at 468 (1990) (employee will not "be employed by or act on behalf of" any competitor); *Roanoke Eng'g*, 223 Va. at 551, 290 S.E.2d at 883 (employee will not "directly or indirectly ... be employed by" any competing business); and *Meissel*, 198 Va. at 579, 95 S.E.2d at 187 (employee will not "enter into the insurance business ... or associate himself or herself with any" insurance agency).

competition clauses because solicitation is a form of competition." *Strategic Res. v. Nevin*, 2005 U.S. Dist. LEXIS 30985 at *10-11 (E.D. Va. 2005).

Both Ohio and Virginia recognize that "firms have a legitimate interest in protecting their customer contacts." *Eden Hannon*, 914 F.2d at 562. Courts permit restricting a former employee's ability to solicit customers when the employee had "acquired information regarding plaintiff's products and sales practices, including pricing, that would be advantageous to a competitor in soliciting customers, regardless of whether the customers had been former or existing customers of plaintiff or its former employees." *UZ Engineered Products*, 770 N.E.2d at 1080. The covenant not to solicit customers is tailored to meet AWP's legitimate interest in protecting its customer contacts. Rice was responsible for developing close relationships with customers and identify potential opportunities for growth. (Compl. ¶ 17.) He also had access to AWP's confidential and proprietary trade secret information including its strategic plans, customers lists, customer information, and pricing. (*Id.* ¶ 19.) "When an employee, by leaving, threatens to siphon off the former employer's customers or goodwill, the law typically permits greater restrictions to be imposed by contract." *Capital One Fin. Corp.*, 871 F. Supp. 2d at 533 (quotation omitted).

Defendants argue that the provision is overbroad and ambiguous because Rice cannot know all customers and prospective customers of AWP. (Mot. 10.) This mischaracterizes the covenant, which prohibits Rice from contacting customers with which he had contact and those that were customers of AWP within the last 12 months of his employment. The restriction is reasonable in light of Rice's managerial responsibilities and access to AWP's customer lists, strategic plans and other confidential and proprietary trade secret information. Ohio law recognizes AWP's interest in "limiting not only a former employee's ability to take advantage of

personal relationships the employee has developed while representing the employer to the employer's established client, but also in preventing a former employee from using his former employer's customer lists or contacts to solicit new customers." *UZ Engineered Products*, 770 N.E.2d at 1080. Virginia law is the same. "It can require a great deal of time and personal contact to build a solid base of clients. If your sales representatives are free to leave the firm and try to take these clients along at any minute, this investment can be undermined and thus discouraged." *Eden Hannon*, 914 F.2d at 563.

The single case Defendants cite (Mot. 10) is distinguishable because the covenant in that case prohibited the former employer from contacting a customer "in any manner" or "for any purpose." *Lasership Inc. v. Watson*, 79 Va. Cir. 205, at *8 (2009). The court invalidated the covenant because it could apply to contact that did not involve business in competition with the former employer. *Id*. Putting aside that the court in *Lasership* wrongly decided the issue of enforceability on a motion to dismiss, the covenant in the Rice Agreement is narrowly drafted so that he does not "solicit or accept any business in competition with AWP."

### (C) The Covenant Not to Solicit Employees Is Enforceable.

The covenant not to solicit employees in the Rice Agreement is reasonable for similar reasons as the other two covenants. It provides that for 12 months after leaving AWP Rice may not solicit current employees or those whose employment ended within the past 12 months. (Compl. Ex. A § 2(d).) Defendants argue that it is "unenforceable per se" because it is overbroad and ambiguous. (Mot. 9.) They rely on a single case, *ManTech Int'l Corp. v. Analex Corp.*, 75 Va. Cir. 354 (2008). (Mot. 9). The *ManTech* court's cursory analysis, which was on a demurrer, concluded the phrase "solicit or induce" was vague and could apply to circumstances that were not improper. *Id*. at *3. The clause in the Rice Agreement is more detailed, also provides that

Rice may not cause any employees to breach their agreements with AWP, and thus is narrowly tailored to protect AWP's legitimate business interests.

Virginia courts recognize a business's legitimate interest in preventing former employees from soliciting its most experienced and high-performing employees. *Int'l Paper Co. v. Brooks*, 63 Va. Cir. 494, at *2 (2003). Rice was responsible for managing his staff of more than 30 employees and ensuring compliance with safety training, which is important in the industry. (Compl. ¶¶ 12, 17.) Rice knew which employees were the best and used his knowledge of AWP's employee policies and compensation to recruit those employees. (*See id.* ¶¶ 17, 19.) Indeed, Rice has recruited at least three employees to SJK. (*Id.* ¶ 46.)

Accordingly, the covenant not to solicit employees is reasonable in light of these circumstances and should be enforced.

### (3) *A Virginia Court May Modify The Rice Agreement to Render It Enforceable.*

To the extent the Court may find one of the covenants in the Rice Agreement unenforceable as written, Ohio law, which governs the Rice Agreement, permits "reasonable alteration." Defendants incorrectly argue that the presence of provisions in the Rice Agreement and the Watkins Agreement that permit modification or elimination of invalid provisions render the agreements unenforceable in their entirety. (Mot. 12.)

Regarding the Rice Agreement, courts in Virginia routinely apply the law of another state if the parties to a contract specifically agree. In *Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection, Inc.*, No. 3:12CV146-HEH, 2012 WL 1415632, at *4 (E.D. Va. Apr. 23, 2012), this Court held that "[a]pplying the law of a state that allows 'blue penciling' is not so repugnant to Virginia public policy as to overcome Virginia's preference for enforcing choice-of-law and forum-selection clauses." *See also Jones v. Dent Wizard Int'l Corp.*, No. CL02–386, 2002 WL

32254731, *3 (Va. Cir. Ct. 2002) ("[I]t would not violate any strong public policy of Virginia to [apply the substantive law of a different State,] even though [that State] follows the 'blue pencil' rule and Virginia does not."). Consequently, Ohio law applies. Even if the Court were to find an aspect of the Rice Agreement to be overly broad, the remedy is for the Court to modify the agreement to make it enforceable.

With respect to the Watkins Agreement, Defendants do not argue that the covenant not to compete or the covenants not to solicit are invalid or unenforceable. AWP did not allege that Watkins breached any of those covenants. Moreover, under Virginia law, the presence of the modification provision does not automatically render the agreement unenforceable. There is no question that under Virginia law "unenforceable provisions may be severed from a contract and the remainder of the contract enforced." *Daston Corp.*, 80 Va. Cir. 611, *5.

### B. Defendants Do Not Argue That AWP Failed to State a Claim For Misappropriation of Trade Secrets.

Defendants request dismissal of Count IV in their motion but provide no argument in support. They do not argue, let alone demonstrate, that AWP failed to state a claim for misappropriation of trade secrets. Defendants' motion to dismiss Count IV must be denied. Moreover, as explained in its Memorandum in Opposition to Defendant David S. Rice's Motion to Dismiss (ECF No. 28), AWP has sufficiently alleged a claim for misappropriation of trade secrets.

### C. AWP's Claim for Business Conspiracy Remains Valid.

Because Defendants have abandoned their motion to dismiss the claim for misappropriation of trade secrets, their motion to dismiss Count V for business conspiracy also necessarily fails. The claim for misappropriation that forms the predicate for its business

conspiracy claim. *See Buffalo Wings Factory, Inv. v. Mohd*, 622 F. Supp. 2d 325 (E.D. Va. 2007).

Focusing exclusively on the claim for tortious interference, Defendants argue that AWP failed to allege an "unlawful act or an unlawful purpose" because the allegations "only amount to a breach of contract under the otherwise unenforceable Rice agreement." (Mot. 11.) But, as demonstrated above, the motion to dismiss the tortious interference claim is without merit. Defendants have not even argued that the Watkins Agreement is invalid, nor have they demonstrated that the Rice Agreement is invalid. Consequently, AWP alleged a valid claim for tortious interference with contract, which further supports its business conspiracy claim. *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 218, 754 S.E.2d 313, 319 (2014) ("[W]e hold that tortious interference with contract and tortious interference with business expectancy each constitute the requisite 'unlawful act' to proceed on a business conspiracy claim under Code §§ 18.2–499 and –500.").[6]

---

[6] Under Virginia Code § 18.2–500, "[a]ny person who [is] injured in his reputation, trade, business, or profession by reason of a violation of § 18.2–499" may seek relief in a civil court. Va. Code § 18.2–500(A). The relevant portion of Virginia Code § 18.2–499 imposes liability on "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of ... willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever. . . ." Va. Code § 18.2–499(A). To ultimately prevail under this statute a plaintiff must plead the following elements: "(1) concerted action; (2) legal malice; and (3) causally related injury." *Schlegel v. Bank of America*, 505 F. Supp. 2d 321, 325 (W.D. Va. 2007).

## IV.     CONCLUSION AND PRAYER

For the reasons set forth herein, AWP respectfully requests that the Court deny Defendants' Motion to Dismiss Counts III, IV and V.

Dated: June 8, 2016                           Respectfully submitted,

/s/_____
Bernard J. DiMuro, Esq.
VSB No. 18784
*Counsel for Plaintiff AWP, Inc.*
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
bdimuro@dimuro.com

*Admitted Pro Hac Vice:*

Robert P. Ducatman, Esq.
Jeffrey Saks, Esq.
Candice M. Reder, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
rducatman@jonesday.com
jsaks@jonesday.com
creder@jonesday.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 8th day of June, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

| | | |
|---|---|---|
| Michael J. Lorenger, Esq.<br>Lorenger & Carnell PLC<br>651 South Washington Street<br>Alexandria, Virginia 22314<br>(703) 684-1808 Phone<br>(703) 684-1805 Fax<br>mlorenger@lorengercarnell.com<br><br>*Counsel for Defendant David Samuel Rice* | James M. Stewart, Jr., Esq.<br>4041 University Drive<br>Suite 301<br>Fairfax, Virginia 22030<br>(540) 539-4993 Phone<br>(540) 678-5595 Fax<br>jmstewart2@comcast.net<br><br>*Counsel for SJK Services LLC and Keith Frances Dowling* | Shawn Watkins<br>65 Donaldsburg Lane<br>Fairfield, VA 24435<br>(540) 810-2670<br>swatkins@agstacker.com |

      /s/_____
Bernard J. DiMuro, Esq.
VSB No. 18784
Counsel for Plaintiff AWP, Inc.
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
Telephone:   (703) 684-4333
Facsimile:   (703) 548-3181
bdimuro@dimuro.com