**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| AWP, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-CV-332 (TSE/MSN) |
| ) | |
| SJK SERVICES LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
FILED BY DEFENDANT DAVID S. RICE**

Defendant David S. Rice, by counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully submits this Reply Brief in Support of his Motion to Dismiss.

In its Opposition Brief, AWP does not dispute the breadth of the restrictive covenants it seeks to enforce against Defendant Rice. For example, AWP does not dispute that Rice's Confidentiality, Non-Competition & Non-Solicitation Agreement (the "CNNA") prohibits him from becoming a passive stockholder in a public company that competes with AWP; prohibits him from working in a non-competitive position for a non-competitive company that provides advice and services to an AWP competitor; prohibits him from soliciting every company in the country that may one day do business with AWP; prohibits him from retaining even non-employee vendors who have been retained by AWP in the year before he resigned. Instead, AWP urges this Court to allow its claims to proceed, arguing interchangeably that it should be permitted to engage in discovery despite the scope of the covenants, that the restrictions might be

enforceable in some context, and that the Court can always re-write the covenants to make them enforceable.

Although each of these responses is addressed in detail below, a preliminary point is worthy of note. In its Opposition, AWP ignores one of the principal Rule 12 argument advanced by Rice in his Motion to Dismiss; namely, that AWP has failed to allege facts that, if true, would allow the Court to enforce the broad restrictive covenants at issue in this case. Specifically, AWP does not dispute that the restrictive covenants in the CNNA prohibit the activities identified immediately above, and others set forth in Rice's Opening Brief, but AWP fails to point to factual allegations that, if true, would demonstrate that these restrictions are narrowly tailored to protect a specific business interest. AWP relies instead on the general argument that because non-compete enforcement decisions are fact-specific, the Court has no role to play in assessing the legal sufficiency of the specific claims advanced. This is simply a misstatement of the law. A Federal Court may certainly determine that a particular restrictive covenant is unenforceable "as a matter of law." But even in those cases where this conclusion cannot be drawn on the basis of the Complaint alone, Federal Rule 12(b)(6) requires the Federal Court to determine whether the plaintiff has alleged facts that, if true, would allow the Court to enforce the restriction at issue.

I. **Rice's Motion to Dismiss is an Appropriate Vehicle for Assessing the Legal Plausibility of AWP's Breach of Contract Claim.**

AWP's principal argument in opposition to Rice's Motion to Dismiss is that restrictive covenants require a consideration of the facts and therefore Rice's Rule 12 Motion is premature.

AWP's argument is simply incorrect, as to accept it would abrogate the function of Federal Rule 12(b)(6). Federal courts routinely use Rule 12 to dismiss claims seeking the enforcement of restrictive covenants, despite the fact that the underlying substantive law calls for

enforcement decisions to be made on the basis of the unique facts of the case. *See, e.g., Sysco Food Servs. of E. Wis., LLC v. Ziccarelli*, 445 F.Supp.2d 1039, 1047-51 (E.D. Wis. 2006) (granting motion to dismiss non-compete claim despite the Wisconsin Supreme Court's directive that the reasonableness of a restrictive covenant can be determined "only upon a consideration of factual matters"); *Unisource Worldwide v. Swope*, 964 F.Supp.2d 1050, 1064-66 (D. Ariz. 2013) (holding non-compete facially unreasonable despite Arizona law holding that "reasonableness is generally a fact-focused inquiry"); *Heartland Secs. Corp. v. Gerstenblatt*, 2000 U.S. Dist. Lexis 3496 *27 (dismissing claims under New York law).  For the reasons set forth in Rice's Opening Brief and below, this Court can certainly determine that there is no set of facts that would allow AWP to enforce Section 2 of the CNNA against Rice.

But even if a Court determines that any particular restrictive covenant is not necessarily unenforceable "as a matter of law" or "on its face," the Court must still determine whether or not the plaintiff has alleged facts that, if true, set forth a "plausible" case for enforcement of an otherwise disfavored contract.  This is not a controversial proposition, but is instead a direct application of the "plausibility" standard enunciated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Put another way:  The question may not necessarily be whether the covenant is or is not enforceable under any set of circumstances, but whether it may or may not be enforced in light of <u>the facts alleged in the Complaint</u>.  *See, e.g.,* Opening Brief at 7 ("No facts alleged in the Complaint support a post-employment restriction of this breadth"); 8 ("AWP has alleged no facts that support such a broad restriction"); 9 ("There are no facts alleged in the Complaint that, if true, support AWP's efforts to prohibit Mr. Rice from working in such a broad array of non-competitive positions"); 13 ("There are no facts alleged in the Complaint that give rise to a

competitive or protectable business interest in such a restriction"). In particular, to the extent facts alleged in the Complaint "undermine" the plaintiff's arguments for enforcement, the claim should be dismissed. *Sysco Food Servs.,* 445 F.Supp.2d at 1048.

That many, or even most, of the <u>final</u> decisions concerning the enforceability or unenforceability of restrictive covenants are reached following the presentation of evidence does not eliminate the District Courts' role as gatekeeper or otherwise limit the function of Federal Rule 12. In restrictive covenant cases such as this case, that gatekeeper role is particularly important.[1] As the cases cited in all the briefs submitted make clear, the legal and factual hurdles faced by AWP in enforcing the CNNA are significant. Covenants in restraint of trade are not favored, they are strictly construed in favor of the employee, and they will not be enforced if they are broader than necessary to support a narrow range of protectable business interests. *See* Opening Brief at 4-6 (citing cases). In particular, covenants that prohibit a former employee from performing services in noncompetitive roles are invalid. *See, e.g., Omniplex World Servs. Corp. v. US Investigations Servs.*, 618 S.E.2d 340, 342-43 (Va. 2005); *Modern Env'ts v. Stinnett*,

---

[1] The cases cited by AWP on page 7 of its Opposition Brief are not to the contrary. In *Combined Ins. Co. of Am. v. Wiest*, 578 F. Supp. 2d 822 (W.D. Va. 2008), the Court did <u>not</u> accept AWP's argument that non-compete agreements cannot be declared facially invalid. In fact, the Court <u>considered</u> the facial enforceability of a restrictive covenant, concluded that two provisions were, in fact, enforceable, and concluded that a third argument was too fact-intensive to rule as a matter of law. *Id.* at 830-31. Moreover, the Court's analysis supports Rice's argument here, that the Court should consider the factual allegations in the Complaint "[w]hen evaluating the enforceability of a restrictive covenant in the context of a Rule 12(b)(6)." *Id*. at 828. In *Daston Corp. v. MiCore Solutions, Inc.*, 80 Va. Cir. 611, 616 (Va. Cir. Ct. 2010), the Court ruled on a preliminary procedural motion, a "plea in bar," that "the phrase 'substantially similar or related' renders the clause unenforceable because it is vague and bars not only direct competition with Daston, but also the provision of services that are merely 'related' to the services provided by Daston." Finally, *Dodge Data & Analytics LLC v. iSqFt, Inc.*, 2016 U.S. Dist. LEXIS 56550, *35 (S.D. Ohio Apr. 28, 2016) is not even a breach-of-contract case, but an antitrust case, in which the plaintiff alleged the defendant's anticompetitive conduct included a requirement that its employees sign overly restrictive non-compete agreements. In resisting the plaintiff's claim for declaratory relief, the defendant asked the Court to declare that the non-compete restrictions were <u>enforceable</u> (not unenforceable) as a matter of law. The Court rejected this argument and instead held that the plaintiff had stated a valid claim for declaratory relief concerning the overbroad scope of the restrictions. *Id*. at *35.

561 S.E.2d 694, 696 (Va. 2002); *American Building Services, Inc. v. Cohen*, 603 N.E.2d 432, 434-35 (Ohio Ct. App. 1992).

In light of this high burden, and consistent with Federal Rule 12, AWP is required to plead facts in its Complaint that, if true, would entitle it to enforce the covenant at issue in this case. AWP's argument that it should be allowed to proceed through discovery to learn these facts turns *Iqbal* and *Twombly* on their collective head. While AWP may need discovery from Rice and the other Defendants to determine the specific scope of an alleged breach of the contract, or the amount of damages it might recover, or the factual nature of the defenses the Defendants might raise, AWP certainly does <u>not</u> need discovery to learn the facts necessary to support the very restriction it seeks to enforce. If these facts exist (and that really is the central question in any case of this nature), AWP knows them and must plead them.

Here, as Rice's Opening Brief makes clear, AWP has failed to plead these facts. AWP alleges that Rice signed the CNNA, that Rice has breached the CNNA, and that AWP has been damaged by the alleged breach. *See* Complaint ¶¶ 20, 40 - 47. AWP has also alleged that Rice had access to at least some confidential information and at least some customers. Complaint ¶¶ 17, 19. Wholly absent from the Complaint, however, are any factual allegations that, if true, would permit AWP to enforce <u>this</u> <u>restrictive</u> <u>covenant</u>, given its breadth and scope. For that reason, the Complaint fails to state a claim upon which relief may be granted.[2]

---

[2] The Virginia Supreme Court's decision in *Assurance Data, Inc. v. Malyevac*, 747 S.E.2d 804 (Va. 2013) is not to the contrary. In that case, the Court reversed the trial court's decision – made "on the merits" – that a particular restrictive covenant was unenforceable "as a matter of law." The Virginia Supreme Court reasoned that the plaintiff was entitled to present evidence in an attempt to prove the covenant's enforceability. *Id.* at 808-09. Even so, the Court affirmed – under the particular pleading rules of the Virginia courts – that the Demurrer remains the proper procedural vehicle to "test[] the legal sufficiency of the facts alleged in the pleadings." *Id.* at 807. Accordingly, the *Assurance Data* decision – a procedural decision concerning the Virginia Circuit Courts' proper use of a Demurrer – does not command that this Federal Court to ignore the requirements of Federal Rule 12.

**II.     AWP's Half-Hearted Defense of the CNNA's Broad Restrictions Does Change the Nature of the Complaint or Create New Allegations Sufficient to Enforce Them.**

Significantly, AWP does <u>not</u> dispute Rice's reading and assessment of the scope of the three core covenants: the non-competition restriction, the restriction on soliciting customers and potential customers, and the restriction on soliciting employees. Instead, AWP simply re-asserts its allegations that Rice had access to some confidential information and had some customer relationships. AWP does not, however, point to any factual allegations that support the scope of the specific restrictions at issue in this case.

**A.     The Non-Compete Restriction is Overbroad Given the Facts Alleged.**

AWP does not dispute the intended and practical reach of Section 2(c) of the CNNA. For example, AWP does not dispute that this provision: (i) prohibits Rice's employment with a competing business in positions completely dissimilar to the position he had with AWP; (ii) prohibits Rice from working for a competing business in a position that requires entirely different duties and responsibilities than he had for AWP – even as a janitor; (iii) prohibits Rice from being "associated" with, from "hav[ing] any interest of any kind in," from "giv[ing] advice or consultation to," and from being "in any way connected" with any such business, either "directly or indirectly"; (iv) prohibits Rice from working as a supplier to traffic control companies such as AWP itself; (v) prohibits Rice from working for a marketing firm that creates marking materials for traffic control companies; and (vi) prohibits Rice from working for construction companies that hire companies such as AWP and its competitors for traffic control services. AWP has not even disputed Rice's argument that the plain language of the non-compete provision prohibits him from being passive stockholder in a public company that competes with AWP, or that it prevents his <u>spouse</u> from working for a competing entity.

6

AWP's acknowledgment that its non-compete covers these and other non-competitive activities leaves it but one avenue for defending the sufficiency of its claim: It must point to factual allegations that, if true, would allow the Court to enforce these particular restrictions. This AWP has failed to do.

Instead, AWP argues that the prohibition on Rice's employment as a janitor is immaterial because "[t]here is no allegation that Rice is employed as a janitor" for SJK Services. Oppos. Brief at 11-12. This response misses the mark by a wide margin. Whether or not Rice is actually employed as a janitor, and whether or not AWP is attempting to prevent his employment as a janitor, are beside the point. Overbreadth is determined not by what Rice is actually doing, but by what activities the non-compete provision actually proscribes and whether or not the plaintiff has alleged facts that support the restriction at issue. As this very Court reasoned on *Lanmark Tech., Inc. v. Canales*, 454 F.Supp.2d 524 (E.D. Va. 2006):

> *It is of no consequence that Lanmark asserts that it only intends to enforce the non-compete clause to prevent Canales from competing directly with Lanmark or assisting others to compete directly with Lanmark because a request for limited relief cannot cure what is otherwise a defective non-competition agreement.*

*Id.* at 531.

Similarly, AWP acknowledges that the CNNA covers non-employment activities that are not competitive, but argues that the agreement's prohibition of these activities does not automatically render the agreement unenforceable. Oppos. Brief at 14. To support this argument, AWP cites several cases on page 14 of its Opposition Brief that it claims stand for the proposition that restrictions that preclude employment with a competitor "in any capacity" are generally enforceable.[3] However, each of these cases was addressed, by name, by the Virginia

---

[3] AWP cites *Rash v. Hilb, Rogal & Hamilton Co.*, 467 S.E.2d 791 (1996); *New River Media Group, Inc. v. Knighton*, 429 S.E.2d 25 (1993); *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 389 S.E.2d 467 (1990); and *Meissel v. Finley*, 95 S.E.2d 186 (1956).

Supreme Court in *Modern Env'ts v. Stinnett*, 561 S.E.2d 694, 695 (Va. 2002), where the Court <u>specifically</u> <u>and</u> <u>expressly</u> <u>rejected</u> AWP's argument. There, the Court rejected the arguments advanced by the company that its agreement was enforceable, despite its prohibition of the former employee's employment by a competitor "in any capacity," because the restrictions enforced in these other cases were similarly broad. In rejecting this argument, the Court rejected Modern Environment's argument that the other cases were analogous, noting:

> *[I]in only one case cited by Modern was the reasonableness of a restrictive covenant challenged on the basis that it precluded a former employee from <u>any</u> <u>type</u> of employment with a competitor. In that case, the restrictive covenant was determined to be reasonable because another provision in the non-compete agreement specifically allowed the employee to work in the employer's industry in a non-competing "role."*

*Modern Env'ts*, 561 S.E.2d at 696. Moreover, in *Modern Environments*, the Virginia Supreme Court sustained the trial court's dismissal of the breach-of-contract claim on legal grounds because the restrictions were overbroad. The Court found that – like AWP in this case – Modern Environments had failed to proffer any specific facts that would allow the agreement to be enforced, given its breadth. *Id.*

Finally, AWP takes Rice to task for failing to "dispute" that he had access to confidential information and that he developed relationships with some customers, suggesting that somehow his failure to "dispute" these facts undermines his Motion to Dismiss. Oppos. Brief at 12-14. This argument amounts to little more than misdirection. First, Rice cannot "dispute" these allegations in connection with his Motion to Dismiss, because these factual allegations must be considered to be true at this stage of the proceedings. More important, these allegations establish, at most, that AWP may have a protectable interest in <u>some</u> <u>form</u> of restrictive covenant. But these allegations fall far short of establishing that AWP has protectable interests that require a restrictive covenant as broad as the one at issue in this case. AWP is not assisted in

8

this argument by the cases cited on pages 12-13 of its Opposition Brief, as, at most, these cases stand for the proposition that interests such as the protection of confidential information and customer goodwill may support a post-employment restrictive covenant in some form. But this basic proposition does not mean that a company alleging these interests in conclusory fashion can impose on a former employee whatever restrictive covenant it wants. Yet that is the argument AWP advances here. In short, AWP's argument in favor of Section 2(c) of the CNNA amounts to this: "We have alleged that Rice had confidential information and customer contact, so our agreement is enforceable." Fortunately, the Supreme Court has made clear that Federal Rule 12(b)(6) is not so easily circumvented.

Moreover, the covenants at issue in each of those cases did not suffer from the overbreadth so plainly evident in the CNNA. In *Brainware, Inc. v. Mahan*, 808 F.Supp.2d 820, 823 (E.D. Va. 2011), the non-competition agreement prohibited the employee from "develop[ing], design[ing], produc[ing], market[ing], sell[ing] or render[ing] . . . products or services competitive with" the former employer's products and services, and therefore did not violate the "janitor rule." In *Capital One Fin. Corp. v. Kanas*, 871 F.Supp.2d 520, 524-525 (E.D. Va. 2012), the agreement included an express exception that allowed the former employee to work for a competing company provided he did not provide services directly to a line of business that was directly competitive. *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 563 (4th Cir. Va. 1990) did not involve a non-compete agreement at all, but was instead a dispute over a "non-circumvention agreement" entered into in connection with an effort to acquire an investment portfolio. The court noted that the agreement was similar to a restrictive covenant and therefore analyzed the restriction using the same enforceability factors. In enforcing the agreement, the Court noted that the restriction did not prevent the bound party

9

from investing in a bid won by a competitor – an exception that in this context avoided what would be an analogous "in any capacity" deficiency. Finally, in *Rogers v. Runfola & Assoc., Inc.*, 565 N.E.2d 540, 544 (Ohio 1991), the Court enforced the restrictive covenant only in part, having concluded that it was overbroad and unenforceable in its original form.

      **B.**     **<u>AWP has Failed to Allege a Factual Basis for Enforcement of its Restriction on Soliciting Customers.</u>**

In defense of Section 2(e) of the CNNA, AWP argues that customer non-solicitation provisions are enforceable in the general sense, but it offers no meaningful defense of the <u>specific</u> <u>provision</u> to which it has subjected Rice.

Tellingly, AWP mischaracterizes the scope of the restriction when it argues that the clause "is narrowly drafted to apply to solicitation of customers <u>for</u> <u>which</u> <u>Rice</u> <u>was</u> <u>responsible</u> . . . ." Oppos. Brief at 17. In fact, the clause is not so limited. Section 2(e) of the CNNA expressly applies to "any person or entity who was an existing or prospective customer or client of AWP at the time of, or at the time during the twelve (12) months preceding, [Rice's] termination of employment." CNNA § 2(e). This clause can mean nothing other than what it says; namely, that it applies to <u>every</u> customer and <u>every</u> potential customer of AWP, in <u>every</u> line of business, in <u>every</u> one of its 40 offices, in <u>every</u> one of the 18 states in which it does business, and beyond – despite the fact that Rice is alleged to have worked solely in a small office in Manassas, Virginia. AWP points to no facts in the Complaint that, if true, would establish a basis for prohibiting Rice from soliciting customers with which he had no contact. The best AWP can do is point to its boilerplate allegations in Paragraphs 17 and 19 of the Complaint that Rice had "close relationships" with "existing customers," and that he had access to customer lists and confidential information. Complaint ¶¶ 17, 19. There is no allegation of fact that establishes that Rice's had any customer relationships beyond those in his Virginia

10

office, let alone that he had such sufficient customer contacts that he must be prohibited from doing business with every AWP customer and potential customer across the nation. Accordingly, AWP has failed to state a plausible case for enforcement of Section 2(e).

Additionally, AWP's attempt to defend the "prospective customer" provision is a non-starter. AWP agrees that the term "prospective customer" is not defined in the CNNA, and there is no allegation in the Complaint that gives form or meaning to this broad phrase. Indeed, the Complaint says nothing about "prospective" or "potential" customers at all. For this reason, AWP's citations in support of its argument are unavailing. In *UZ Engineered Prods. Co. v. Midwest Motor Supply Co.*, 770 N.E.2d 1068, 1080 (Ohio Ct. App., 2001), the restrictive covenant was expressly limited to customers and potential customers "in a designated geographic area that the former employees had worked while in plaintiff's employment." And in *Tradesmen Int'l, Inc. v. Prof'l Labor Support, LLC*, 2011 U.S. Dist. LEXIS 61633, *22-23 (C.D. Ill. June 7, 2011), the agreement precisely defined "potential customers" to include only those entities that had actually received proposals for services from the company. Thus, in both cases, the restrictions were limited and defined in a way that made them at least potentially enforceable, and thus made them very unlike the restriction AWP seeks to enforce here.

    C.    **<u>AWP has Failed to Allege a Factual Basis for Enforcement of its Restriction on Soliciting Employees.</u>**

AWP's defense of Section 2(d) of the CNNA wholly fails to address the arguments advanced by Rice; namely that a provision supposedly designed to protect AWP's investment in its employees <u>also</u> prohibits Rice from "retain[ing]" any and all non-employee individuals who have "provid[ed] services to AWP." AWP wrote this restriction specifically to cover not only individuals who are "employed by" AWP, but also those who are "providing services to AWP." Accordingly, the clause prohibits Rice from doing business with (i.e., "retaining") any of AWP's

vendors, merchants and consultants who have also been retained by AWP or were providing services to AWP, in any office across the country. That this is the intent of the clause cannot be disputed, because AWP limited the following clause – Section 2(d)(ii) – to "employees." As with Section 2(e), above, it is again telling that in its Opposition Brief AWP misquotes the restriction. AWP informs the Court: "The covenant not to solicit employees . . . provides that for 12 months after leaving AWP Rice may not solicit <u>current</u> <u>employees</u> or those whose <u>employment</u> ended within the past 12 months." Oppos. Brief at 17 (emphasis added). As noted above, the clause restricts far more that. AWP does not dispute Rice's assertion that Section 2(d) prohibits him from hiring an HR consulting firm or even a contract painting company that performed services for AWP – in any one of its 40 offices – at any time during the year before Rice resigned. AWP has offered no defense of the reach and scope of this restriction.[4]

### III.     AWP's Reliance on the Blue Pencil Provision Cannot Save the Complaint.

Unquestionably, the restrictions are broader than necessary in light of the allegations AWP has advanced in the Complaint. This proposition cannot be reasonably disputed. Not surprisingly, AWP anoints the "blue pencil" provision of the CNNA, and analogous Ohio law, as its savior. But AWP fails to address the myriad decisions by Virginia courts that have found blue penciling repugnant to Virginia public policy, so much so that in some cases a "blue pencil" provision's very presence in an agreement is enough to invalidate it. *See, e.g., BB&T Ins. Servs. v. Thomas Rutherford, Inc.*, 80 Va. Cir. 174, 181 (Va. Cir. Ct. 2010); *Pace v. Ret. Plan Admin. Serv., Ltd.*, 74 Va. Cir. 201, 205 (Va. Cir. Ct. 2007); *Better Living Components, Inc. v. Willard*

---

[4] AWP's citation to *Int'l Paper Co. v. Brooks*, 63 Va. Cir. 494 (Va. Cir. Ct. 2003) supports Rice's argument. There, the employee non-solicitation clause prohibited the solicitation of only the former employer's employees (not all vendors and contractors as the AWP restriction does) <u>and</u> prohibited such solicitation only to the extent the recruitment was for a competing entity. *Id.* at 494. Nevertheless, the Court concluded that the restriction was a restraint of trade subject to the same exacting scrutiny as a full-scope non-compete and ultimately determined it was too broad to be enforced. *Id.* at 495-96.

*Coleman & Blue Ridge Truss & Supply*, 67 Va. Cir. 221, 226-227 (Va. Cir. Ct. 2005); *Northern Virginia Psychiatric Group, P.C. v. Halpern*, 19 Va. Cir. 279, 282 (Va. Cir. Ct. 1990); *cf. Dothan Aviation Corp. v. Miller*, 620 F.2d 504, 507, 1980 U.S. App. LEXIS 16024, *5 (5th Cir. Ga. 1980) ("We conclude that the blue pencil theory of Alabama law, as applied to restrictive covenants ancillary to employment contracts such as the one at issue, contravenes Georgia policy, and would not be applied by Georgia courts. The Georgia Supreme Court has consistently ruled that the blue pencil theory may not be applied to covenants ancillary to employment contracts.").

Instead, AWP relies on Judge Hudson's decision in *Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection*, 2012 U.S. Dist. Lexis 56818 (E.D. Va. April 23, 2012). In that case, the Court applied Kentucky law to a restrictive covenant, rejecting the defendants' contention that Kentucky law should be rejected entirely because of its "blue pencil" rule. Judge Hudson's reasoning is not applicable here, because in *Edwards Moving & Rigging, Inc.* the Court was <u>not</u> required to rely on "blue penciling" to determine that the agreement at issue might be enforceable. Instead, Judge Hudson denied the defendants' motions to dismiss because a material dispute of fact prevented him from determining the actual scope of the agreement. *Id.* at *13-14 (concluding that a factual dispute concerning the geographic coverage of the restriction could not be resolved until after discovery). In this case, AWP has not advanced <u>any</u> argument that the CNNA is not as broad and all-encompassing as Rice asserts in his Opening Brief. Accordingly, unlike the agreement at issue in *Edwards Moving & Rigging, Inc.*, the restrictions at issue in the CNNA <u>will</u> <u>require</u> "blue penciling" if they are to be enforced at all under the facts alleged in the Complaint. In *Broadway & Seymour, Inc. v. Wyatt,* 1991 U.S. App. LEXIS 33801, *18, 944 F.2d 900 (4th Cir. 1991), the Fourth Circuit used this very reasoning when it concluded

that a North Carolina court could adopt Florida's substantive law to assess the enforceability of a restrictive covenant, notwithstanding differences in the two states' "blue pencil" rules.[5] The Court reasoned that the differences in "blue pencil" rules were relevant only if the Court would be required to modify the agreement to enforce it. If not, the adoption of Florida law would not violate public policy. *Id.* at *18 ("The differences between North Carolina and Florida law regarding blue penciling are irrelevant where the covenant would be enforced as written in both states.").

### IV. AWP's Factual Allegations are Insufficient to State a Claim for Misappropriation of Trade Secrets.

Rice has moved to dismiss Count IV for the straightforward reason that AWP has failed to provide the factual detail necessary to state a claim under the Virginia Uniform Trade Secret Act, Va. Code Ann. §§ 59.1-336, *et seq.* Specifically, AWP has set forth only boilerplate, conclusory allegations that Rice had access to trade secrets. *See* Complaint ¶¶ 13 (referring generically to "strategic plans," "customer and prospective customer lists," "customer information and preferences," and "pricing"); 19 ("Rice accessed AWP's confidential and proprietary trade secret information," including the aforementioned information). AWP's allegations concerning Rice's alleged "misappropriation" are even more conclusory. *See* Complaint ¶¶ 45, 83.

AWP does not attempt to distinguish the six cases cited by Rice on pages 19-20 of his Opening Brief. Instead, AWP relies solely upon *Marsteller v. ECS Fed., Inc.*, 2013 U.S. Dist. LEXIS 126927 (E.D. Va. Sept. 5, 2013). In that case, however, the company's allegations of which trade secrets were in issue and how those trade secrets were misappropriated were far

---

[5] As the Court found, North Carolina law prohibits "blue penciling" while Florida law allows the practice. 1991 U.S. App. LEXIS 33801, *14-*15.

more detailed than the generic allegations advanced by AWP in this case.  Specifically, the defendant/counter-plaintiff in *Marsteller* alleged:

- That four specific sets of documents were entitled to trade secret protection.  *Id.* at *10 (referring expressly to (i) ISO management system documents,; (ii) the ECS Capture Plan; (iii) the Capture Plan Templates; and (iv) the Pipeline review documents).

- That these four sets of documents in particular would give a competitor a specific competitive advantage in that the competitor could learn the company's bidding plans and target renewal contracts in anticipation of those plans.  *Id.* at *11-*12.

- That the former employee misappropriated these documents by specifically delineated electronic means.  *Id.* at *14 ("ECS alleges that on two separate occasions Marsteller transferred proprietary documents belonging to ECS to an external storage device.").

- That the company's detailed allegations of the manner in which those trade secrets were used made it not just possible, but plausible, that specific ISO certification documents had been used by the employee's new employer.  *Id.* at *15-*16.

For reasons set forth above and in Rice's Opening Brief, AWP's allegations come nowhere close to satisfying this standard.

For all these reasons, all claims asserted against Mr. Rice should be dismissed.

Dated:  June 14, 2016      By:   /s/ Michael J. Lorenger
                                 Michael J. Lorenger (Va. Bar #38910)
                                 Lorenger & Carnell PLC
                                 651 South Washington Street
                                 Alexandria, Virginia 22314
                                 (703) 684-1808 – Phone
                                 (703) 684-1805 – Fax
                                 mlorenger@lorengercarnell.com

                                 Counsel for Defendant David Samuel Rice

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of June , 2016, I filed the foregoing REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FILED BY DEFENDANT DAVID S. RICE with the Court's electronic filing system, which will effect notice on counsel of record:

Bernard Joseph DiMuro
DiMuroGinsberg PC
1101 King Street
Suite 610
Alexandria, VA 22314-2956
Phone: (703) 684-4333
Fax: (703) 548-3181

Robert P. Ducatman
Jeffrey Saks
Candice Reder
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Phone: (216) 586-3939
Fax: (216) 579-0212

I also delivered a copy by email and regular First-Class Mail, postage pre-paid, to Defendant Shawn Watkins, pro se, at the following address:

65 Donaldsburg Lane
Fairfield, VA  24435

/s/ Michael J. Lorenger
Michael J. Lorenger